CHAFFEE and CHAPMAN *vs.* THE BAPTIST MISSIONARY CON-
VENTION OF THE STATE OF NEW-YORK.

The return of the surrogate, on an appeal to the circuit judge in relation to the probate of a paper propounded as a will of personal estate, should state who were the next of kin of the decedent, and which, if any, were infants, who were cited to attend upon the proving of the will, and who did in fact attend and litigate the will.

And the appellants upon the appeal to the circuit judge, should present a petition of appeal to him, and should state therein among other things the names of the persons interested in sustaining the decree of the surrogate; and they should make all those who appeared before the surrogate in opposition to the appellants parties to such appeal. Such petition of appeal should also pray that a day may be fixed, by the circuit judge, for the persons made respondents therein and for the appellants to be heard on the appeal; so that due notice of the hearing may be given to the respondents.

If either of the respondents is an infant, the circuit judge should appoint a guardian ad litem to protect his rights on the appeal.

And in the decree of the circuit judge on such appeal, or in the proceedings before him which are returned by him to the surrogate with his decision, it should appear which of the respondents named in the petition of appeal appeared before him, and that those respondents who did not appear had been duly notified of the time and place of hearing, as directed by the statute.

An attestation clause, showing upon its face that all the forms required by the statute have been complied with, is not absolutely necessary to the validity of a will; as the subscribing witnesses will be permitted to prove that the forms were in fact complied with, although the attestation clause is silent on the subject.

And after the death of the subscribing witnesses, a compliance with any of the forms required by the statute and not noticed in the attestation clause, may even be presumed from circumstances.

Although the attestation clause to a will states that all the formalities required by the statute in the execution of the will have been complied with, the fact may be disproved by the subscribing witnesses.

But a proper attestation clause, showing that all the statute formalities have been complied with, will, in the absence of proof to the contrary, be pre-

sumptive evidence of the fact, after the death of the subscribing witnesses, or where, from the lapse of time, the witnesses cannot recollect what took place at the execution of the will.

A proper attestation clause is also important to show that the person who prepared the will knew what formalities in its execution were required, and to raise the presumption that he gave to the testator the necessary information in relation thereto ; or if he was present at the execution of the will, that he took care that such formalities were complied with.

It is proper that the whole attestation clause should, at the time of the execution of the will, be read over in the hearing of the witnesses and of the testator. And where the testator is illiterate, it is also proper that the whole will should be deliberately read over to him in the presence and hearing of the witnesses ; and that the fact of such reading in his presence should be stated in the attestation clause ; or at least the witnesses should, by inquiries of such illiterate testator, ascertain the fact that he is aware of the contents of the instrument which he executes and publishes as his will, and that he is possessed of a competent understanding to make a testamentary disposition of his property. The neglect, however, of these precautions, will not render the will invalid, if the court and jury before whom the question of its validity is tried are satisfied, upon the whole evidence, that the will was duly executed, and that the testator understood its contents.

Where any of the formalities required by the statute, in the execution of a will, are not substantially complied with, the will is void.

The burden of proving the due execution of the will lies upon the party seeking to establish it. But it may be proved by other evidence than that of the subscribing witnesses ; or its due execution may be inferred from circumstances, where the subscribing witnesses are dead, absent, or otherwise incapacitated to give testimony, or where, from lapse of time or otherwise, they are unable to recollect whether the requisite formalities were observed when they witnessed the execution of the instrument.

The subscription of the will must be made by the testator in the presence of each of the attesting witnesses, or it must be acknowledged by him to have been so made, to each of the attesting witnesses.

Where the testator, at the time of the execution of his will in presence of the attesting witnesses, placed his finger on his name subscribed at the end of the will, and acknowledged that it was his last will and testament, but there was no evidence that he subscribed it in the presence of the attesting witnesses, or that he acknowledged in their presence that such subscription was made by him or by his direction or in his presence, held that the will was not duly executed.

The making of his mark at the end of the will, by the testator, is a sufficient signing of the will to be a compliance with the requirement of the statute.

January 23.     THIS was an appeal from the decision of the circuit judge of the seventh circuit, reversing the sentence or decree of the surrogate of the county of Onondaga against the validity of a paper propounded as the will of Hannah Chan-

dler deceased. The instrument propounded was without date, but from the testimony of one of the witnesses it must have been made about three or four years before it was offered for probate in 1841. It purported to have been signed with the name of the testatrix, and sealed; it had, in addition, an attestation clause, by which the subscribing witnesses were made to certify that it was signed, sealed, delivered and published by her, to be her last will and testament, in their presence; and that they had thereto subscribed their names as witnessess, in her presence, but without stating that it was done at her request. One of, the subscribing witnesses, however, swore positively that he and the other witness subscribed it at her request, though the latter could not recollect whether she requested him to sign it or not. Both witnesses went there at the request of the person who was named as executor, and in whose hand-writing the instrument was supposed to be, to witness the will. But that person did not go into the room with them, and no person was present at the time except the two subscribing witnesses and the testatrix. And the person named as executor, and at whose request they went to the house of Mr. Chapman with whom she lived, was dead at the time her will was offered for probate. Neither of the subscribing witnesses knew whether the testatrix could write; but it appeared from papers in the surrogate's office relative to the administration of the estate of her deceased husband, that she signed the bond, oath, inventory, &c. by making her mark only. The subscribing witnesses testified that when they went to the decedent's room she took the instrument, which then had her name to it, out of her drawer, and putting her finger on her name, said, " I acknowledge this to be my last will and testament," or words to that effect. But she did not admit, in the presence of the witnesses, that she had subscribed her name to the will, or that it had been subscribed thereto by any other person by her direction. After the witnesses had subscribed their names to the will, she delivered it to one of them with a request that he would keep it; and he retained it accor-

1843.

Chaffee
v.
Baptist Miss'ry
Convention.

dingly until it was delivered to the surrogate, for probate, after her death.

The surrogate having decided that the instrument propounded as a will had not been executed according to law, and refused to admit it to probate, The Baptist Missionary Convention of the State of New-York entered an appeal to the circuit judge. The case having been heard before him, he came to the conclusion that the surrogate's decision, upon the questions of law arising upon the sentence or decree appealed from, was erroneous ; and he reversed the decision, and directed that the respondents in that appeal should pay to the appellants $39,51, for their costs upon such appeal. This decision having been certified to the surrogate, Chaffee and Chapman, as distributees or next of kin of the decedent, entered an appeal to the chancellor.

G. F. *Comstock*, for the appellants.

J. F. *Sabine*, for the respondents.

THE CHANCELLOR. The return in this case is very imperfect, as it does not state who propounded the will before the surrogate, when the proceedings to prove it were instituted ; who were ascertained by him to be the next of kin of the decedent, and which of them, if any, were infants, or were cited to attend upon the proving of the will ; or who did in fact attend and litigate the will before him. All this should have appeared upon the return, to enable the circuit judge to know who were the proper persons to be made parties to the appeal to him. (*Laws of* 1837, *p.* 525, § 5 *to* 10.) The appellants also should have presented a petition of appeal to the circuit judge, naming, among other things, the persons who were interested in sustaining the decree of the surrogate, as the next of kin of the decedent ; and making at least all of those who appeared before the surrogate in opposition to the appellants, parties to such appeal. It should also pray that a day may be fixed for the persons thus made respondents, and the ap-

1843.

Chaffee
v.
Baptist Miss'ry
Convention.

pellants, to be heard on such appeal ; so that due notice of the hearing may be given to such of the parties as are entitled to appear to sustain the decision of the surrogate. (2 *R. S.* 608, § 93, 94.) If either of the respondents is an infant, who has no general guardian, or whose general guardian has an adverse interest, the circuit judge should appoint a guardian ad litem to protect the rights of the infant on the appeal. And in the decree or order of the circuit judge affirming or reversing the sentence of the surrogate, or in the proceedings before him, which proceedings should be returned to the surrogate with his decision so that they may be sent to this court if that decision is appealed from, it should be stated which of the respondents, named in the petition of appeal to the circuit judge, appeared before him ; and it should also be stated that those who did not appear were duly notified of the time and place of hearing, as directed by the statute.

Here the persons who were respondents before the circuit judge are directed to pay the costs of the adverse party. But in the certificate and proceedings sent by the circuit judge to the surrogate, it does not appear who those respondents, were so as to enable the surrogate to carry into effect the decision of the appellate tribunal. (2 *R. S.* 609, § 97.) The appellants in this court, however, have no right to complain that the decree of the circuit judge is so indefinite in this respect that it never can be enforced against them. And the conclusion to which I have come upon the merits of the case renders it unnecessary that I should base the decision, which I make, upon any of these technical defects in the proceedings before the circuit judge, or on the defective return of the surrogate. For enough appears to show that in point of law the surrogate was right in supposing that the paper propounded was not executed in the manner prescribed in the revised statutes, so as to make it a valid will of either real or personal property in this state.

An attestation clause, showing upon its face that all the forms required by the statute have been complied with, is not absolutely necessary to the validity of a will ; as the

witnesses will be permitted to prove that the forms were in fact all complied with, although the attestation clause is silent on the subject. Indeed it has been decided that a formality of this kind, not noticed in the attestation clause, may even be presumed from circumstances, after the wit- nesses to the will are dead. (*Croft* v. *Pawlet*, 2 *Str. Rep.* 1109. *Bryce* v. *Smith*, *Willes'* 1. *Hands* v. *James*, *Co- myn's Rep.* 531.) The statute does not require an attestation clause showing that the proper legal formalities were com- plied with; and although upon the face of the instrument those formalities are stated to have taken place, the fact may be disproved by the witnesses. But prudence requires that a proper attestation clause should be drawn, showing that all the statute formalities were complied with; not only as presumptive evidence of the fact in case of the death of the witnesses, or where from lapse of time they cannot re- collect what did take place, but also for the purpose of showing that the person who prepared the will knew what the requisite formalities were, and therefore gave the proper information to the testator, or saw that they were complied with if he was present. To impress the more strongly upon the memory of the witnesses the important fact that all the legal forms requisite to a due execution of the will were complied with, at the time when they subscribed their names as witnesses to such execution, the safer course always is to read over the whole of the attestation clause, in the presence and hearing of the witnesses, and of the testator. And where the person executing the will is not known to the subscribing witnesses to be capable of reading and writing, especially if he executes the will as a marksman, it would be proper that the whole will should be delibe- rately read over to him in the presence and hearing of the witnesses, and the fact of such reading in his presence should be stated in the attestation clause. Or at least the witnesses ought, by inquiries of the illiterate testator himself, to as- certain the fact that he was fully apprized of the contents of the instrument which he executed and published as his will, as well as that he was of competent understanding to make a testamentary disposition of his property. All these

1843.

Chaffee
v.
Baptist Miss'ry
Convention.

hings, however, are matters of precaution and prudence, to prevent any well founded doubt upon matters of fact; and where they are neglected it does not necessarily render the will invalid, if the court or jury which is to pass upon the question of its validity is satisfied, upon the whole evidence, that the will was duly executed, and that the testator understood its contents.

The legislature, however, has seen proper to prescribe certain legal requisites to the due execution of a will; all of which must be substantially complied with or the will is void in law. And the *onus* of satisfying the court that these forms were complied with lies upon the party seeking to establish the will. But the fact of such compliance may be proved by other evidence, or inferred from circumstances, where the subscribing witnesses are dead, or absent, or otherwise incapacitated to give testimony; or where from lapse of time, or otherwise, they are unable to recollect whether the requisite formalities were observed at the time when they witnessed the execution of the instrument. The first of the legal forms required by the statute is that the will shall be subscribed by the testator at the end thereof. And the second, which is equally imperative, is that such subscription shall be made by the testator, in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses. (2 *R. S.* 63, § 40, *sub.* 2.) It is not necessary that the testator should be able to write his name; for it has been determined, that the making of his mark, by the testator, is a sufficient signing within the statute. (1 *Rob. on Wills*, 94. *Addy* v. *Grix*, 8 *Ves.* 504.) The former statute required that the will should be signed by the testator, or by some other person in his presence and by his direction. And that the legislature did not intend to alter the law in that respect is evident from the fact that this mode of subscribing the testator's name, by the instrumentality of another person but by the testator's direction, is recognized in the 41st section. There was no evidence here, however, that the name was subscribed to this testa-

mentary paper by the direction of the testatrix, or even in her presence. And for aught that appears to the contrary the will may have been brought to her precisely in the form in which it appeared when she took it out of the drawer. She did not admit to either of the witnesses that she had subscribed her name to the will, or say that any other person had written it there in her presence, or by her direction. On the contrary, one of the witnesses swears that he did not hear her say any thing about who wrote the name; and the other says nothing on the subject. The attestation clause states that the will was signed by her in the presence of the witnesses; but this is contradicted by the testimony of both of these witnesses.

The putting her finger upon the part of the will where the seal was, and acknowledging that the instrument was her last will and testament, was merely a compliance with the directions of the third subdivision of the 40th section, which required her to declare the instrument which she asked the witnesses to attest, to be her last will and testament. But it did not supersede the necessity of an actual subscription in the presence of the witnesses, or an acknowledgment to each of them that she had previously subscribed it, or had directed some other person to sign it with her name which appeared thereon.

In *Remsen* v. *Brinckerhoof* (26 *Wend. Rep.* 331,) Chief Justice Nelson, after stating the four requisites to a valid execution of a will, under the provisions of the 40th section of the revised statutes on the subject, says " it is obvious that any one of these four requisites, in contemplation of the statute, is to be regarded as essential as another ; that there must be a concurrence of all to give validity to the act, and that the omission of either is fatal." And as the will in that case was pronounced invalid, although subscribed by the testatrix in the presence of the attesting witnesses, for want of due publication in their presence, so in this it must be declared not to have been duly executed because it was not subscribed by her in the presence of the witnesses, as is erroneously stated in the attestation clause ;

and because there is no proof that she acknowledged in their presence that her name subscribed to it was put there by her, or by her direction, or in her presence.

I regret to be compelled to come to this conclusion in regard to this particular case. For the circumstances are such as to render it highly probable that the will had-been drawn under the direction of the testatrix, and that her name had been put to it by her request after she had perfectly understood the contents of the will. She must likewise have supposed that the instrument .which she acknowledged to be her last will and testament and which she requested these witnesses to attest as such, was properly executed to carry into effect her pious and benevolent intentions in favor of the respondents, and of the other charitable institutions mentioned therein. And she may have had very good reasons for wishing to conceal from her brother in law, and his family, a knowledge of the fact that she was disposing of her property in this manner. But, as the requisites of the statute have not been complied with, this court can only pronounce the legal result of such non-compliance.

It does not however appear to be a case in which a charitable society which has litigated in good faith, and has been defeated upon a technical objection as to the due execution of the will, should be charged with costs. But as the appellants have successfully contested the case for the benefit of themselves and the other parties who may be entitled as the next of kin of the decedent, they should not be permitted to bear the burden of the costs personally.

A decree must therefore be entered, reversing that of the circuit judge and affirming the sentence and decree of the surrogate ; and directing the taxable costs of the appellants, Chaffee and Chapman, both in this court and before the circuit judge, to be paid out of the estate of the decedent, when letters of administration shall have been granted thereon.(a)

---

(a) See *Hudson* v. *Parker*, decided 4th July, 1844, before D. Lushington in the prerogative court, (8 *Lond. Jurist Rep.* 786;) and *Burgoyne* v. *Showler*, (*Idem*, 812.)