Butler *v.* Benson.

---

Same Term. *Before the same Justice.*

Butler *vs.* Benson.

Appeals from the sentences or decrees of surrogates to circuit judges, pending before such circuit judges on the first Monday of July, 1847, were not transferred to the supreme court by the new constitution, nor by the judiciary act of 1847.

Such appeals were special proceedings pending before the circuit judges, and were provided for by the 76th section of the judiciary act. 'They may, by an order of

Butler *v.* Benson.

the supreme court, be transferred to any justice thereof, but cannot be heard by the supreme court itself; except upon an appeal from the decision of the justice.

What things are now necessary to the due execution of a will.

*It seems* the subscribing witnesses should sign the same in the presence of the testator.

The testator must subscribe his name at the end of the will; which subscription may be by his autograph, or by his mark; or, if he is unable to write, by another person in his presence and by his express direction.

The subscription must be made in the presence of the attesting witnesses, or must be acknowledged to them. The acknowledgment may be made to the witnesses separately, or the testator may subscribe and publish in the presence of one, and acknowledge his signature before another. When he subscribes or acknowledges he must declare the instrument to be his last will and testament. And there must be at least two attesting witnesses; each of whom must sign as a witness at the end of the will, at the request of the testator, and at the time of the subscription or acknowledgment thereof and publication by the testator.

If the subscribing witnesses to a will fail to prove the instrument, other witnesses may be called. Though the proof, in such cases, should be very clear.

In ordinary cases, where persons are called in to witness a paper, which they do, in the presence of the testator; he at the same time subscribing it, and declaring that it is his last will and testament, a request to the witnesses to sign their names as witnesses may be presumed.

Under our statute of wills the testator must subscribe the will; and he must do this, or acknowledge it, in presence of the witnesses. And though he has subscribed it, if the subscription was not in the presence of the witnesses, publication is not a sufficient acknowledgment.

A witness may use a memorandum to refresh his recollection. But it is not evidence to go to the jury; even though he swears he thinks it correct. He may refresh his memory, and then, if his recollection recalls the transaction, that recollection is testimony to go to the jury. The witness must be conscious of the reality of the matters he swears to, at the time he testifies. It is not sufficient that his mind recurs to the memorandum, and that he himself believes that true.

How far the attestation clause in a will can be used as a memorandum to refresh the memory of the scrivener who drew the will, as to the facts attending its execution.

The mere unsupported belief of a witness is not evidence. Belief, to be admissible, must rest upon sufficient and legal foundation. No belief, however confident, will suffice, without recollection.

Where the witnesses to a will are dead, or from the lapse of time do not remember the circumstances attending the attestation, the law, after the diligent production of all the evidence existing, presumes the instrument properly executed, if there are no circumstances of suspicion; particularly where the attestation clause is full.

Old age alone, in a testator, is not a sufficient ground for presuming imposition upon him.

Butler *v.* Benson.

THIS was an appeal by Butler from the decision of the surrogate of the county of Washington, admitting to probate an instrument purporting to be the last will and testament of Cole Benson, deceased, on the application of Sanford R. Benson, the respondent. There were two subscribing witnesses, John F. Beadle and Elijah Brownell; who, together with one Peleg Thomas, were called by the respondent to prove the execution of the will. The substance of their testimony is stated in the opinion of the court.

*J. R. Doolittle,* for the appellant.

*C. F. Ingalls,* for the respondent.

HAND, J. A preliminary question arises in this case upon the construction of the judiciary act. The appeal to the circuit judge of the 4th circuit was taken, and the return made, in the year 1846, and the question occurs, whether the case goes to the supreme court, or should be heard before a justice when not holding a term? Neither of the counsel expressed any preference, but submitted this question to the justice then holding the special term at Salem, and an order was made *pro forma* by the court, that should that be found to be the proper course, the appeal should be heard by the justice. The circuit judge, on these appeals, did not act as a court. (*See Hawley* v. *Donnelly,* 8 *Paige,* 416.) No decree could be made by him in the matter, while holding a vice chancellor's court, nor could any decree or order be entered by the clerk of that court. He could affirm or reverse, and award costs, but his order, unless an issue was ordered, was to be certified to the surrogate who enforced it. And the method of reviewing his decision was by a petition of appeal filed with the surrogate, to which the surrogate should have made a return. (*Gardner* v. *Gardner,* 5 *Paige,* 170. *Hawley* v. *Donnelly,* 8 *Id.* 416.) This matter, therefore, was pending before him as circuit judge, and not as vice chancellor. And it was not in any way in the court of chancery. Consequently, it was not transferred to the

Butler. *v.* Benson.

new supreme court by the constitution. Nor was it transferred by the judiciary act. The seventeenth section of that act gives an appeal from the decision of the surrogate, in such cases, after the 5th day of July, 1847, but does not in terms extend to appeals then pending before a circuit judge. In this respect the phraseology is clearly prospective. This was therefore a special proceeding pending before a circuit judge; and is provided for by the seventy-sixth section of that act, and could, by an order made on or before the 5th day of July last, have been transferred to any justice of the present supreme court. No such order having been made, it could be transferred by that court to one of its justices; as was done in this case. The terms of that section are general, and provide for transferring special proceedings to a county judge, as well as to a justice of the supreme court. But this jurisdiction, under the old system, was exclusively in the circuit judge ; and the sixteenth section of the judiciary act, in the broadest and most comprehensive language, gives to the justices of the supreme court all the powers before possessed by circuit judges; and it cannot for a moment be supposed that the legislature, by the language of the seventy-sixth section, intended to confer jurisdiction in a case like this upon county judges. In case of an appeal from the decision of the justice, after the proceedings are remitted to the surrogate, (or other officer acting as such,) that appeal would be to the supreme court, as it was to the court of chancery before. And the supreme court, in place of the old court of chancery, has full power, by the constitution and the sixteenth section of the judiciary act. No doubt, if the cause should be taken to the supreme court, after the decision by a justice acting for the circuit judge, a single justice would order it heard at a general term. (*Judiciary act,* § 20.)

This brings us to the main question. Was this instrument duly executed as a will? Four things, at least, are requisite for this purpose, which may be succinctly stated as follows : the testator's subscription at the end of the will; doing this in presence of each of the attesting witnesses, or acknowledging such subscription to them; publication, or declaring to them

Butler *v.* Benson.

at the time of making or acknowledging subscription, that it is his last will and testament; and attestation by at least two witnesses, who sign their names as such at the end of the will, at his request. (2 *R. S.* 63, § 40. *Nelson, C. J. in Remsen* v. *Brinckerhoff,* 26 *Wend.* 325 ; *S. C.* 8 *Paige,* 489. *Chaffee* v. *Baptist Miss. Conv.* 10 *Id.* 86. *Rutherford* v. *Rutherford,* 1 *Denio,* 33.) The statute is silent as to the witnesses' signing in the presence of the testator. That was necessary here before the revision in 1830 ; and has been in England, certainly since 1677. (1 *R. L.* 364. 29 *Car.* 2, *ch.* 3.) But it is believed the requirements of the statute are merely cumulative, and that this is still necessary. The object of the old rule was to prevent imposition by changing the paper. And perhaps no instrument can be considered properly attested, unless the witnesses subscribe as such at the time of its execution or acknowledgment. (4 *Taunt.* 214. 2 *Maule & Sel.* 576. 2 *Wend.* 575.) This point, however, does not arise in this case ; for the evidence is pretty clear, that the witnesses subscribed in the presence of the testator, and that no physical inability prevented him from seeing them do so. The difficulties in the case do not lie there.

The appellant insists that the proof before the surrogate was insufficient as respects nearly every requirement of the statute. On the other side it is contended that the proof was direct on all, and if not clear and conclusive, was sufficiently so to make a case by the aid of legal presumptions. As I have not been able to find this instrument duly executed, except by such aid, for the better understanding of the subject it may be useful briefly to advert to the former law, in relation to the proof of wills.

Before 1830, our statute was almost a literal transcript of the 5th section of the statute of frauds. That section requires that all wills of "land shall be in writing and signed by the party so devising the same, or by some other person in his presence and by his direction, and shall be attested and subscribed in the presence of the devisor, by three or four credible witnesses." The recent English statute, passed in 1837, (2 *Vict. ch.* 26, § 9,) requires the will to be in writing, and " signed at the foot or end

thereof by the testator, or by some other person in his presence
and by his direction.  And such signature shall be made or
acknowledged by the testator in the presence of two or more
witnesses present at the same time; and such witnesses shall
attest and shall subscribe the will in the presence of the testator,
but no form of attestation shall be necessary."  And no other
publication is required.  Our statute is as follows: "1. It shall
be subscribed by the testator at the end of the will.  2. Such
subscription shall be made by the testator in the presence of
each of the attesting witnesses, or shall be acknowledged by
him to have been so made, to each of the attesting witnesses.
3. The testator, at the time of making such subscription, or at
the time of acknowledging the same, shall declare the instru-
ment so subscribed to be his last will and testament.  4. There
shall be at least two attesting witnesses, each of whom shall
sign his name as a witness at the end of the will, at the request
of the testator."  (2 R. S. 63, § 40.)  A brief parallel of the two
existing statutes may lead us to understand the changes effected
by them.  1. By the provisions of both, the testator must sign
at the end of the will.  The only alteration by the English
statute is, that the signature must be at the end of the will;
whereas by the statute of frauds, writing his name any where
in the will, or at the top or bottom, or in the margin, was suffi-
cient.  Indeed, at one time sealing was deemed a sufficient
signature.  (*Lemayne* v. *Stanly*, 3 *Lev.* 1.  *Warneford* v.
*Warneford*, 2 *Strange*, 764.  *Lee* v. *Libb*, 1 *Show.* 78.)  That
was afterwards reconsidered.  (*Ellis* v. *Smith*, 1 *Ves.* 11.
*Wright* v. *Wakeford*, 17 *Id.* 458.)  Lord Eldon, in the last
case, said a seal was unnecessary.  Sealing and delivery were
sufficient for a deed, from the conquest until the statute of
frauds; and it was very natural that this solemnity should be
approved in making wills by the early decisions upon that stat-
ute.  Even magna charta has no subscription by parties or
witnesses.  Nothing but the solitary seal of King John.  (*Thomp-
son's Essay on Magna Charta*, 100, 274, 325, 448.  *And see
note to Burling* v. *Paterson*, 9 *Carr. & Payne*, 570.)  Our
statute requires the testator to *subscribe*; the English statute

only to *sign*, at the end. Perhaps there it may not now be necessary that he should actually *subscribe* the will. (*See* 2 *Curteis*, 324, *Woodington's will*.) The English statute allows another to sign for, and by the direction of the testator, in his presence. Ours, in terms, requires the testator to do it personally. (*But see* § 41, *and remarks of Walworth, Ch.,* 10 *Paige*, 91.) 2. The subscription of the testator in presence of the witnesses, or the acknowledgment thereof, is to be done in the same manner in both, except that there all the witnesses must be present at the same time, while here the old rule prevails, allowing the acknowledgment and attestation to be at different times. (1 *Phil. Ev.* 499. *Ellis* v. *Smith*, 1 *Ves. jun.* 11.) 3. Here the testator must declare it to be his last will and testament. There it is unnecessary. The great question of the necessity of publication is put at rest by both statutes. 4. There the attestation must be by at least two witnesses in the testator's presence, but the statute is silent as to a request. Here the statute requires the same number to sign at his request, but is silent as to his presence. The word "credible," in the qualification of witnesses, is omitted in both statutes. (*See* 1 *Phil. Ev.* 494; 2 *Cowen & Hill's Notes*, 1341, 2 ; 2 *Sugd. on Vend.* 253, 6*th Am. ed.*) These changes are important. It would seem that under the former law it was the opinion of many able judges that no publication was necessary. And not only so, but when it was proved that the testator wrote his name in any part of the will before attestation, and acknowledged the instrument to be his deed or act, knowing himself what it was, and the witnesses attested it in his presence, it was valid ; although the testator did not declare it to be his will, nor did the witnesses see his signature nor have any intimation what the paper was ; particularly if he wrote the will himself. ( *White* v. *British Museum,* 6 *Bing.* 310. *Wright* v. *Wright*, 7 *Id.* 457. *Johnson* v. *Johnson,* 1 *Cr. & Mees.* 146. *And see Matthews on Ex'rs*, 50 ; 3 *Stark. Ev.* 1689 ; *Walworth, Ch., in Brinckerhoff* v. *Remsen*, 8 *Paige*, 488 ; *Gibbs, C. J.,* 7 *Taunt.* 361, *sed quære ; Wright* v. *Wakeford,* 17 *Ves. jun.* 458, 9 ; *Doe* v. *Burditt,* 4 *Adol. & Ellis,* 1.)

Butler *v.* Benson.

The following is perhaps a pretty correct summary of the requirements of our statute. The testator must subscribe his name at the end of the will, which may be by his autograph, or by his mark, or if he is unable to write, by another in his presence and by his express direction. This subscription must be made in the presence of the attesting witnesses, or the making of such subscription must be acknowledged to them. If by acknowledgment, that may be made to the witnesses separately, or he may subscribe and publish in the presence of one, and acknowledge, &c. before another. When he subscribes or acknowledges he must declare the instrument to be his last will and testament. And there must be at least two attesting witnesses ; each of whom must sign as a witness at the end of the will, at the request of the testator, and at the time of the subscription or acknowledgment thereof and publication by the testator.

If this view of the statute is correct, the question is, Was this instrument executed in compliance with its provisions ? Before the surrogate an objection was taken to the admissibility of the witness Thomas. But the rule is well settled, that if the subscribing witnesses fail to prove the instrument, others may be called. (1 *Phil. Ev.* 502. 4 *Wend.* 277. 7 *Taunt.* 251. *Lowe* v. *Joliffe,* 1 *Black. Rep.* 365. 3 *Stark. Ev.* 1692, *and cases there cited.*) Though the proof in such cases should be very clear. (*Cowen & Hill's Notes,* 1356.)

None of the witnesses in this case pretend to have heard the decedent acknowledge his signature. Brownell has no recollection of seeing him write. Beadle thinks he saw him sign the will, but is not certain. Thomas was not certain he saw him sign it. He is certain he did sign it, but cannot say, independently of the attestation clause, whether he signed it in the presence of the witnesses. No evidence of the hand-writing of the testator has been offered. This is in substance all the proof there is of the subscription or acknowledgment of the same by the testator. The proof of publication is pretty clear. Beadle thinks the testator declared it to be his will, and Thomas swears to it positively. There is no doubt but that Beadle and Brow-

nell signed it as witnesses.   And I think, in ordinary cases, a request may be presumed, where two persons are called in to witness a paper, which they do, in the presence of the testator, he at the same time subscribing it and declaring that it is his last will and testament.   There is a purpose and entirety in the transaction that favors a pretty liberal intendment as to his wishes.   No particular form of words is required, to comply with the statute.   If the testator knows what is necessary, and does it, he may use his own language.   (*Per Nelson, C. J.* 26 *Wend.* 332.)   But the statute must be substantially complied with, regardless of consequences.   No part of it can be omitted, and the sooner these changes are understood, the sooner certainty and quiet will prevail on this important branch of our jurisprudence.

The principal difficulties in this case arise upon the testator's subscription, and particularly his subscription in the presence of the witnesses.   It would seem from some of the old cases, that much may be presumed from the declaration that it was the testator's will.   Thus in *Lemayne* v. *Stanly*, (3 *Lev.* 1,) it does not appear that the attestation was by the request of the testator, or that the witnesses saw him write any part of the will, or that he acknowledged to them that he wrote his name. This was the first case under the statute of frauds, and a special verdict found that Sir John Stanly wrote his will all with his proper hand, and commenced " In the name of God, Amen. I, John Stanly, make this my last will and testament."   And by this he devised the lands in question, but did not subscribe his name to it, merely affixing his seal, and this was subscribed by three witnesses in his presence.   (*But see the observations of Ld. Hardwicke, in Gray* v. *Atkinson*, v. *Ves.* 454; *and of Ld. Eldon in Morrison* v. *Turnour*, 2 *Ves.* 183.)   So, too, the case of *Ellis* v. *Smith*, (1 *Ves. jun.* 11,) decided by four most eminent men, seems to imply that publication alone was sufficient evidence of signing.   That, however, was at least doubtful, even under the statute of frauds.   Be that as it may, our statute is too explicit in its terms to allow any such presumption.   The testator must subscribe the will, and do this, or acknowledge it,

Butler *v.* Benson.

in presence of the witnesses.   And though he has subscribed it, if not in presence of the witnesses, publication is not a sufficient acknowledgment.   (*Chaffee* v. *Bap. Miss. Conv.* 10 *Paige*, 85.) There is no evidence of any acknowledgment of the testator's signature in this case, except the publication.   The case then rests upon the evidence of his signing in the presence of witnesses.   If this is proved, his signature is proved.   If he did not do this, it is of no consequence whether his signature is proved or not, for his omission to sign or acknowledge in the presence of, or to, the witnesses, is fatal.   (*Per Nelson, C. J.*, 26 *Wend.* 331.)   On this point the testimony of Brownell affords no direct evidence.   He remembers nothing about it.   Beadle thinks it was done, but cannot be certain.   He is not certain that the testator and Thomas were both in the room when it was witnessed, but thinks they were.   Indeed, he is not certain whether it was the testator or Thomas, that requested the witnesses to attest the will; or which of them declared it to be his last will and testament.   Thomas, at first, could not remember whether the testator signed it before or after the witnesses were called into the room to witness it; and finally he does not recollect whether he saw him sign it at all.   Nor can he recollect, independent of the writing, whether he signed the will in their presence or not.   By the "writing," I understand the witness to mean the attestation clause.   After a careful perusal of the testimony of this witness, I have come to the conclusion that his evidence on this branch of the case, depends entirely upon the use he may make of the attestation clause as a memorandum.   The rule is well settled that the witness may use his memorandum to refresh his recollection.   But it is not evidence to go to the jury, even though he swears he thinks it correct. He may refresh his memory, and then, if his recollection recalls the transaction, that recollection is testimony to go to the jury. He must be conscious of the reality of the matters he swears to, at the time he testifies; and it is not sufficient that his mind recurs to the memorandum, and he himself believes that true. A contrary doctrine would introduce a new species of written evidence, in the creation and production of which, the parties

to be affected had no part. And it would effectually preclude all inquiry into the circumstances of the transaction, except what a witness, perhaps casually present, might think it convenient or important to note. The courts of South Carolina have perhaps gone a little farther. (*State* v. *Rawls*, 2 *Nott & McCord*, 331. *And see Cowen & Hill's Notes*, 750.) But in this state, and in England, this rule of evidence, it is believed, remains unshaken. (1 *Phil. Ev.* 289, *and cases there cited*. 1 *Stark. Ev.* 129. *Cowen & Hill's Notes*, 551, 2, 750. *Feeter* v. *Heath*, 11 *Wend.* 477.) There is a class of cases where the memorandum itself may be good secondary evidence, as original entries made in the usual course of business, and where the witness swears he made them, and intended to make them correctly, and believes them true. (*Merrill* v. *Ithaca and Owego R. R. Co.*, 16 *Wend.* 586. *Van Dyne* v. *Thayre*, 19 *Id.* 162. *Bank of Monroe* v. *Culver*, 2 *Hill*, 531.) But this does not extend to memoranda made by a witness for his own convenience, and for the mere purpose of aiding his recollection. (*Lawrence* v. *Butler*, 5 *Wend.* 301.) In such cases the general rule obtains. Perhaps the case of *Van Dyne* v. *Thayre* carried the principle to the utmost bounds. But that was a strong case. There the witness' business was to make the inventory, and he swore he made it from papers before him. But were the rule otherwise, it is difficult to see how the attestation clause in this case could be used as a memorandum to refresh the memory of the scrivener who drew the will, as to the facts of its execution. The weight of evidence I think is, that this clause, and indeed the whole will were drawn before the witnesses were called into the room. If so, as to him, it was a memorandum of what was to be done, and not of facts that had already transpired. Had this been drawn by a lawyer who was accustomed to draw wills, and whose duty it was to see that every thing necessary was done, and he had sworn that every thing was intended to be done as stated in the attestation clause, another question would have arisen, and perhaps a certain intendment might have obtained. The evidence of Thomas, therefore, does not

Butler *v.* Benson.

establish the fact that the testator signed in the presence of the witnesses.

We are thus thrown back upon the testimony of the attesting witnesses. Beadle states his belief, but in truth goes no farther. Of course the onus is upon the respondent. The mere unsupported belief of a witness is not evidence. It has been said, a witness may pretend to testify to his belief, and be convicted of perjury therefor. (2 *Russ. on Crimes,* 597.) But this is where it is proved he swore to a belief contrary to his knowledge; or where the witness was deemed to have used this language as a mere mode of expression, and as an absolute term. In this sense, no doubt, Todd, Justice, used it in *Riggs* v. *Tayloe,* (9 *Wheat.* 483.) It is very different where the witness honestly believes a fact to exist, but says he cannot be certain, and is not positive and cannot remember, but thinks it so. No one would suppose a note proved by a witness who stated that he did not know the party's hand-writing, but had an impression and belief that it was his signature. This would not be evidence. And yet belief as to hand-writing, identity of persons &c. is admissible, where founded upon sufficient knowledge. In *Riggs* v. *Tayloe,* the party swore that it was his impression that he had torn up the paper. He was not certain, but such was his impression; and if not, he had lost it and had made search and could not find it. It was not material whether it was destroyed or lost : either (in that particular case) would let in secondary evidence. Had there been no evidence of a search, the sufficiency of the party's impression and belief would have been passed upon. Belief, to be admissible, must rest upon sufficient and legal foundation. No belief, however confident, will do, without recollection. (*Cutter* v. *Carpenter,* 1 *Cowen,* 81. *Brown* v. *Cady,* 19 *Wend.* 477. 1 *Stark. Ev.* 127. 23 *Wend.* 425. 9 *Cranch* 388. 1 *John.* 97. 1 *Phil. Ev.* 290.) Belief alone is not sufficient for the judge, even. As remarked by Lord Eldon, after he had been 25 years chancellor, "individual belief ought not to govern a case; it must be judicial persuasion."

The only remaining question is, whether in this case the

Butler *v.* Benson.

presumption of law upon all the testimony, will sustain the execution of this instrument as a will ?

The will had been published, if at all, about ten years before the hearing. One of the subscribing witnesses has nearly forgotten the whole transaction, and the other is almost as much lost on many important points. Where the witnesses are dead, or from lapse of time, do not remember the circumstances attending the attestation, the law, after the diligent production of all the evidence then existing, if there are no circumstances of suspicion, presumes the instrument properly executed. (*Mathews'* *Pres. Ev.* 35, 39, 260. 1 *Phil. Ev.* 501, 503. *Cowen & Hill's Notes*, 1303. *Burrows* v. *Lock*, 10 *Ves.* 470, *n. a, Sumner's ed.* *McQueen* v. *Farquhar*, 11 *Id.* 467. *James* v. *Parnell*, 1 *Turner & Russ.* 417. *Doe* v. *Burditt*, 4 *Adol. & Ellis*, 1. *Hall* v. *Luther*, 13 *Wend.* 491. *Woodworth, J. in Dan* v. *Brown*, 4 *Cowen*, 489. *Walworth, Ch. in Brinckerhoff* v. *Remsen*, 8 *Paige*, 501. *Nelson, Ch. J. in S. C.* 26 *Wend.* 332. *Spencer, C. J. in Jackson* v. *Le Grange*, 19 *John.* 383. *Hare's will*, 3 *Curteis*, 54.) Particularly where the attestation clause is full. (*Chaffee* v. *Bap. Miss. Conv.* 10 *Paige*, 90.) That rule applies to this case, and constrains me, though with much doubt and hesitation, to sustain the will. The force of this legal presumption would, in my view, be greatly lessened, were it clearly proved that the attestation clause was not read to the witnesses. But even then, we are to intend (unless shown to be otherwise) that the witnesses understood what they were signing, and perhaps if they did not read that clause, after the lapse of ten years, if the witnesses do not remember the manner of execution, the maxim *omnia præsumuntur recte et solemnitur esse acta* applies. Considering the age of the decedent, who had passed the ordinary limit of man's existence, the limited acquaintance the witnesses had with him and his hand-writing, the almost negative character of some part of the testimony of the subscribing witnesses, and their imperfect memory, I should have been much better satisfied if a jury had passed upon the case. But old age alone is not sufficient ground to presume imposition; and I have not discovered any evidence of fraud

or undue influence in this case, or circumstances to awaken suspicion. (*See Lewis* v. *Read,* 1 *Ves.* 19, *per Buller, J.; Whelan* v. *Whelan,* 3 *Cowen,* 537, *Griffith* v. *Robbins,* 3 *Mad. Rep.* 191; *Lord Brougham in Hunter* v. *Atkin,* 1 *Coop. Sel. Cas.* 464; *Odell* v. *Buck,* 21 *Wend.* 142; 22 *Id.* 526; *Story's Eq.* §§ 236, 7; *Durling* v. *Loveland,* 2 *Curteis,* 225; *Chambers* v. *Queen's Proctor, Id.* 415; *Ingram* v. *Wyatt,* 1 *Hagg.* 384.)

I have somewhat extended my remarks in the examination of this case, not only that the parties may understand my views, but because, upon the argument, every provision of the statute was fully pressed upon my consideration.

The proceedings are affirmed.

