MASON *vs.* JONES.

*In the matter of the estate of* JOHN MASON, *deceased.*

H. A., one of the next of kin, having within a year after probate filed allegations against the validity of the will and the competency of its proof, and the Surrogate having confirmed the probate, and his decision having been affirmed, on appeal, by the Circuit Judge, an appeal was taken to the Court of Chancery, and was heard by the Supreme Court, as a proceeding pending in Chancery at the time of the adoption of the new constitution.

By the decree of the Supreme Court, the will was declared not to have been sufficiently proved, the decisions of the Surrogate and the Circuit Judge were reversed upon a question of fact, and a feigned issue was ordered, to try the questions arising upon the application to prove the will on the allegations. The issue was tried, and the jury found that the instrument was not the last will and testament of the deceased. J. M., one of the next of kin, filed with the Surrogate a copy of the verdict, and a certificate of the County Clerk that it was a final determination of the issue by the jury ; and he thereupon moved for a revocation of the probate. *Held,* that it was not proper to revoke the probate until the final decision of the issue should be certified by the Court.

It *seems* that the statute has not conferred the right upon a party who has not filed allegations and who has not appealed, to contest the probate on allegations filed and appeal taken by another party. Whether, independently of the statute, such right exists by the course of the ecclesiastical practice,— *Quære.*

When, upon allegations, it has been finally determined that the will is not sufficiently proved, any of the next of kin not a party to the contest, may avail himself of the decision though it was not obtained at his instance.

Proceedings in respect to probate or administration, are not properly suits or actions, but are special proceedings of a mixed character, capable of being promoted by any one interested; and, when finally determined, the judgment partakes so far of the character of a judgment *in rem,* that any other party in interest can avail himself of it.

The final decision as to testacy or intestacy, when regularly obtained, is conclusive as to all the world.

The only case where the statute directs a feigned issue as to the validity of a will, on appeal, is where the Circuit Judge has *reversed* the decision of the Surrogate on a question of fact.

In the present instance, the decree of the Supreme Court was not a final determination upon the merits, but contemplated further proceedings before deciding upon the validity of the will. If the trial of the issue took place under the provisions of the statute, the Supreme Court had power to order a new trial. If the issue was a feigned issue out of Chancery, for the purpose of informing the Court, the verdict may be set aside, or judgment be given without regard to the verdict.

J. J. Ring, *for Petitioner.*
M. S. Bidwell *and* F. B. Cutting, *for Executors.*

The Surrogate.   John Mason died September 26, 1839. An instrument propounded as his last will and testament, was duly admitted to probate by the Surrogate, October 21, 1839; and letters testamentary were issued to the executors.   On the 20th day of October, 1840, Joseph Alston and Helen his wife, in the right of the latter as one of the next of kin, filed allegations against the validity of the will and the competency of the proof thereof.   The executors and legatees were cited to appear before the Surrogate, and show cause why the probate should not be revoked.   The Surrogate, having heard the proof of the parties, confirmed the probate, on the 20th of June, 1842. Mr. Alston appealed to the Circuit Judge, who affirmed the Surrogate's decision, on the 23d of November, 1844; and he then appealed from the decision of the Circuit Judge to the Court of Chancery.   The case was pending before the Chancellor; and by Article XIV., § 5, of the new constitution, jurisdiction of the appeal as a proceeding then pending in the Court of Chancery, was vested in the present Supreme Court.   A decree was pronounced at a general term of the Supreme Court, on the first Monday of June, 1848, declaring that the "order or decision of the said Surrogate, and also the said decision of the said Circuit Judge, are and that each of them is erroneous in this, to wit, that the said paper-writing purporting to be the last

will and testament of the said John Mason, deceased, was not before said Surrogate, and, on the proof certified by him, is not sufficiently proved to be such last will and testament; and it is therefore ordered, adjudged, and decreed, that the said last-mentioned order or decision of the said Surrogate, and the said decision of the said Circuit Judge, and each of them, be and the same are and each of them is hereby accordingly reversed ; and such reversal being founded upon a question of fact as aforesaid, it is further ordered, adjudged, and decreed, that a feigned issue be made up between the above-named appellants of the one part, and the above-named respondents of the other part, to try the questions arising upon the application to prove the said will on said allegations, against the same,  *   * and that the form of such issue be settled by any one of the Justices of this Court," &c.

The issues made up under this order, were tried at a Circuit Court held by his Honor Judge Roosevelt, and a verdict rendered January 13, 1853.  The jury found that the instrument was declared by John Mason to be his last will and testament "without knowledge;" that he requested the witnesses to attest it ; that execution was not procured by fraud, circumvention, undue influence, force, or coercion ; but that it was not " the last will and testament of the said John Mason;" that at the time of execution he was not " of sound mind and memory, and in all respects capable of making a will;" and that the instrument was not "freely and voluntarily executed or made as his last will and testament by the said John Mason."

James Mason having procured a copy of the verdict, and a certificate by the County Clerk, that it was " the final determination" of the issues " by said jury," filed the same in this court on the 14th of January, 1853 ; and he now moves the Surrogate to revoke the probate of the will of John Mason, and to grant him letters of administration as in case of intestacy.

1. It is first objected that James Mason not having filed allegations against the will, is not entitled to avail himself of the decision. The citation on allegations issues to the executors and *legatees*, and not to the next of kin; and from this it would seem, that only the executors and *legatees*, *i. e.*, those interested to support the will, were proper parties before the Surrogate. The next of kin may file allegations contesting the probate; but there is no provision for the next of kin to intervene in opposition to allegations, or in support of them where they have been filed by other parties. The presumption is, that James Mason was cited to attend the hearing on the allegations as a legatee, which character constituted his only title to be cited. But in what right was he made party to the appeal? Appeals from the decisions of Surrogates on allegations, "may be made in the manner, within the time, and with the effect prescribed by law" (2 *R. S., p.* 62, § 35). Whether the mode prescribed by law, was an appeal directly from the Surrogate to the Chancellor, or from the Surrogate to the Circuit Judge, was decided by the Chancellor, in *Alston* vs. *Jones*, 10 *Paige*, 98, who determined that the appeal from the decision of the Surrogate on allegations, was to the Circuit Judge.

The section of the statute authorising appeals to the Circuit Judge on the original probate of a will, was declared to be applicable to allegations against a probate already granted. That section (2 *R. S., p.* 66, § 55) authorises an appeal by the *next of kin*, from a decree of original probate; but, as already seen, next of kin are not parties respondents to allegations filed after probate. Could they appeal as next of kin, when they were not parties in that character? James Mason never filed allegations against the will; nor did he appeal from the decision of the Surrogate, confirming the probate. Could he on the allegations filed by another person, be heard against the will before the Surrogate, or before the appellate court?

On the hearing before the Circuit Judge, notice is required to be given only "*to the parties who appeared before the Surrogate in opposition to such appellant.*" (2 *R. S., p.* 608, § 94. *Chaffee* vs. *Baptist Missionary Convention,* 10 *Paige,* 85.) The statute, therefore, would not seem in terms to confer the right upon a party, who had not filed allegations, and who had not appealed, to contest the probate on allegations filed and appeal taken by another party. According to the course of the Ecclesiastical Courts in England, where a will has been proved in common form, the probate is called in at the instance of the next of kin, and the executor is put to proof *per testes,* in solemn form. In that case, any party in interest may contest the proofs offered by the executor, or intervene on appeal. ( *Newell* vs. *Weeks,* 2 *Phill.,* 224.) The effect of the provisions of our statute is to put the executors to proof of the will *de novo,* when allegations have been filed by any of the next of kin; and although only the executors and legatees are cited, yet it may be that relatives who have not filed allegations may be entitled to intervene against the will, even when the controversy has been instituted by others. Be that as it may, I have no doubt that whenever, on allegations filed by one of the kin of the deceased, the executors have failed in proving the will anew, and the court has decided that the will is invalid, any others of the kin interested in the estate may avail themselves of such decision, although the judgment has not been obtained at their instance. Proceedings in respect to probate or administration, are not properly suits or actions; they are special proceedings of a mixed character, capable of being set in motion by any one interested; but when brought to a final conclusion, the judgment attained partakes so far of the character of a judgment *in rem,* that any other party in interest can avail himself of it. A legatee, for example, who has failed to propound a will, still may, when the will has been propounded by another legatee and been proved, have the benefit of a

probate so obtained. And one of the next of kin likewise—where probate has been called in, the will been contested and rejected as invalid, on the application of another person—may have the benefit of the judgment revoking the probate. The final decision, as to whether the deceased died intestate, or as to the validity of an alleged will, when obtained in regular course of law, is conclusive as to all the world. If, therefore, the allegations against Mr. Mason's will have been finally determined, I think it competent for any person interested in his estate to intervene on the basis of such final decision.

2. Have these allegations been finally determined? The statute directs that when on appeal from the Surrogate to the Circuit Judge, the latter shall "*reverse*" the decision of the Surrogate, "*upon a question of fact*" (2 *R. S., p.* 66, § 57), he "shall direct a feigned issue to be made up to try the questions arising upon the application to prove such will, and shall direct the same to be tried at the next circuit court to be held in the county where the Surrogate's decision was made." This is the only provision made for a feigned issue ; and whether an issue shall be directed or not, is not a matter of discretion with the Circuit Judge, but he is imperatively required to order an issue whenever he *reverses* the decision below, *on a question of fact*. The single condition on which the award of an issue depends, is the reversal on a question of fact. If he reverses *on a question of law*, or if he *affirm*, then no jury is directed, but an appeal lies to the Chancellor. Now, in the present case, the Circuit Judge did not *reverse* the decision of the Surrogate ; but he *affirmed* it, and an appeal was taken to the Chancellor. The exigency on which the statute made the feigned issue to depend, never occurred ; and the *stage* of the case in which that exigency might have occurred, passed away. There can be no doubt, then, that this issue is not the issue directed by statute when the Circuit Judge reverses the decision of the Surrogate on a question of fact.

Whether, however, it is to be treated as such an issue, or is to have the effect of such an issue, on the ground that the decree of the Supreme Court is to be regarded as in effect the decree which the Circuit Judge *ought* to have made, is entirely another question. So far as the Circuit Judge was concerned, the allegations were finally determined. He affirmed the Surrogate's decision; and an appeal being taken to the Chancellor, the papers were remitted to the Surrogate (2. *R. S., p.* 609, § 97), and the case passed out of the hands of the Circuit Judge. The Surrogate then certified the proceedings to the Chancellor (*ibid.*, § 102), who was required by the statute, to "proceed therein, as in cases of appeals from Surrogates" (*ibid.*, § 103.)

3. The appeal pending before the Chancellor was transferred, by the new constitution, to the Supreme Court, to be disposed of in the same course of procedure as would have been proper had it remained with the Chancellor. The tribunal was changed; but the principles applicable to the disposition of the case were not. They remained the same. On hearing the case, the Supreme Court reversed the decisions of the Surrogate and the Circuit Judge, and awarded a feigned issue. James Mason, claiming that the reversal was a final decree, which made it the duty of the Surrogate to revoke the probate, and that the award of an issue was void, applied on these grounds for a revocation of the probate. Judge Ingraham, acting as Surrogate, denied the application, holding that the decision of the Supreme Court was not a final determination of the case on the merits. I entirely concur in that conclusion (*ante, p.* 181). That the Supreme Court never designed the simple reversal of the decree below to be a final decision as to the validity of the will, is apparent from the fact that an issue was ordered. The mere reversal, standing alone, and certified by the Court to the Surrogate, might be final; but a reversal followed by an award of a feigned issue contemplates other proceedings before determining on the validity of the will. The award

of the issue is not inconsistent with the reversal. It is just what the statute directs when the Circuit Judge reverses on a question of fact; and his *reversal* of the decree below is a necessary prerequisite to ordering an issue. The reversal is founded on the evidence taken before the Surrogate. On that evidence, the Supreme Court decreed that the will was insufficiently proved, that the Surrogate erred in confirming the probate upon the proof before him, and therefore his decree must be reversed; and then, the reversal being on a question of fact, the Supreme Court think proper to send the case to a jury and allow the parties an opportunity to produce new testimony. If on such trial the jury should find that the will was sufficiently proved before them, that finding is not necessarily inconsistent with the decision of the Supreme Court,—that the will was not sufficiently proved before the Surrogate; and there is no absurdity in the Court saying that while on the evidence below the proof was defective or unsatisfactory, yet on the trial of the issue the proof was sufficient, and while, on the evidence below, they reversed the Surrogate's decree, yet on proofs adduced before the jury, and on the verdict, they confirm the probate. Viewing, then, the award of the issue as regular and valid, and finding on the face of the decree no indication of what the Court designed after the issue had been tried, whether the verdict should be certified to the Surrogate, as in case of an issue ordered by the Circuit Judge; or whether the Supreme Court would still retain the appeal for further action,—I think it improper for me to proceed on the certificate of the County Clerk, as to the result of the trial. If the trial is to be considered as had under the statute, the Supreme Court may order a new trial; and a stay of proceedings has been ordered against Mr. Alston, for the purpose of making that motion. If the issue is an issue out of Chancery on appeal, for the purpose of informing the conscience of the Court, then the Court may set it aside, or utterly disregard it, and give final judg-

ment for or against the validity of this will (*Lansing* v. *Russell*, 2 *Comstock*, 563); and in that contingency, an appeal will still lie to the Court of Appeals. Finally, I think the certificate of the verdict by the County Clerk insufficient ground for revoking a probate, even when the issue was awarded by the Circuit Judge. The County Clerk certifies that the issue was tried by a jury, and that the verdict was "the final determination thereof *by said jury.*" Of course it was; but that may not be the final determination of the issue; for a new trial may be ordered again and again. It is the final determination of the issue, absolutely, which must be certified to me, and not its determination by a particular jury; and that certificate must show that the Court certify to the Surrogate the final determination, or have authorized such certificate. The only two precedents I find on the records are in that form. The certificates in the cases of *The Will of Benjamin Taylor* and *The Will of Benjamin Romaine*, in both of which feigned issues were ordered, were signed by Justice Edwards. I have no hesitation in holding the certificate of the County Clerk in the present instance entirely insufficient, and, therefore, in every view of the case, must deny the application.