# N. Y. SURROGATE'S COURT.

## In the Matter of EDWARD HEWITT's estate.

*Costs on appeal from surrogate's courts—Power of surrogate to award compensation to special guardians—Code of Civil Procedure, sections 2558, 2565, 2566, 2557, 2589, 2560.*

Except where an appellate tribunal has given directions in the premises, the surrogate has no power to award compensation to special guardians for services rendered by them as such special guardians in proceedings on appeal from orders or decrees of this court; nor with that exception has he any power to make to them or to any other persons in their capacity as parties to such proceedings any award as costs or allowances.

*Decided, May,* 1883.

ROLLINS, J.—An instrument purporting to be the last will of Edward Hewitt was in the year 1881 offered for probate in this court. A contest thereupon arose which resulted adversely to the proponents. While that contest was pending the applicant in the present proceeding was appointed special guardian of decedent's minor children. He represented them in the probate controversy, and by the surrogate's decree was allowed as compensation therefor the sum of twenty-five dollars, which he has since received.

From this decree, which denied probate to the paper pro-

pounded as a will, an appeal was taken to the supreme court. A judgment of affirmance was there pronounced, which was itself subsequently affirmed by the court of appeals.

The special guardian alleges that during the pendency of these appellate proceedings he rendered services which are worthy of compensation, and he now asks that such compensation be awarded him out of the assets of the estate. In opposition to this claim it is urged that the functions of the applicant as special guardian ceased with the entry of the surrogate's decree, and that he was neither required nor empowered by virtue of his office to represent the infants thereafter. This view, as it seems to me, is correct. If the interests of an infant need protection in proceedings upon appeal from the surrogate, it is the province of the appellate court to appoint for that purpose a guardian *ad litem* (*Kellinger* agt. *Roe*, 7 *Paige*, 363; *Underhill* agt. *Dennis*, 9 *Paige*, 209; *Chaffee* agt. *Baptist Miss. Soc.*, 10 *Paige*, 89; *Moody* agt. *Gleason*, 7 *Cow.*, 482; *Fish* agt. *Ferris*, 3 *E. D. Smith*, 567).

It is doubtless true that if an appellate court, though it has made no formal selection of a guardian *ad litem*, has nevertheless practically recognized as such one who has acted as special guardian before the surrogate, the person so recognized may become thereby entitled to compensation.

In the case at bar, for example, the moving party for aught that is disclosed by the papers before me may have been treated by the appellate court as one entitled to represent the infants whose interest in the surrogate's court he had, as special guardian, been bound to protect. Accordingly his claim to be compensated for services rendered in the proceedings upon appeal may have quite as good a foundation as if he had received an express appointment as guardian *ad litem*. But, however meritorious his claim may be, it cannot be enforced here. He must resort for relief to the appellate tribunals wherein he rendered the services. In the absence of directions from those tribunals, the surrogate has no authority to make any provision for his compensation.

Before the enactment of the Code of Civil Procedure the statutes were silent both as to the amount which special guardians should receive in payment for their services and as to the mode of procedure whereby payment for such services could be obtained. But it was in practice assumed that the right of the surrogate to appoint those officers involved the right to direct the payment to them of reasonable compensation. Any question as to the authority to give such direction seems to be now set at rest by the provisions of the Code.

Sections 2558–2565, inclusive, have to do with costs and allowances to executors, administrators, freeholders, appraisers, &c. Then follows section 2566, which declares that " each other officer including a referee and each witness is entitled to the same fees for his services * * * as he is allowed for like services in the supreme court."

While there is here no express mention of special guardians, the language is broad enough to cover such officers, and was intended, I think, to include them.

Now, if their right to be awarded compensation by the surrogate depends solely upon the authority which this section confers, such award can only be made for services rendered in this court.

Aside from the section which has just been quoted, the only Code provisions which have any important bearing upon the matter under discussion, are sections 2557, 2558, 2560 and 2589, which relate to costs awardable to parties in proceedings before the surrogate and on appeal from that court. If, therefore, a special guardian's right to compensation is not to be tested by section 2566 alone, it is because the several sections above cited enlarge the authority of the surrogate and permit him to grant an application like the present, even though no direction has been given by the supreme court or the court of appeals.

It is true that those sections contain expressions which fairly suggest the liberal interpretation here claimed for them— especially when considered by themselves, apart from other

Code provisions *in pari materia*, and without reference to the state of the law upon this subject prior to September 1, 1880.

But if due heed be paid to the entire scheme of appellate procedure established by the Code and to the general policy of the statutes before its enactment, it will be found that the claim here set up cannot be successfully maintained, and that under no circumstances can the surrogate order payment of appeal costs, save in obedience to the directions of an appellate court.

That he was confined within those limits just before the Code went into operation is too well settled to require discussion (*Morgan* agt. *Morgan*, 1 *Abb. Pr.* [*N. S.*], 40; *Seguine* agt. *Seguine*, 3 *Abb. Pr.* [*N. S.*], 442; *Dupuy* agt. *Wurtz*, 47 *How. Pr.*, 225; *Savage* agt. *Gould*, 60 *How. Pr.*, 255).

What change, if any, has since been effected? The Code declares, by its 2557th section, that "except where special provision is otherwise made by law, costs awarded by a decree may be made payable by the party personally, or out of the estate or fund where justice requires."

Manifestly no authority is here given or intended to be given for the award of costs, either upon the appeal or otherwise. The sole purpose of the section is to declare what person or fund is to be made chargeable with costs in cases where such costs are awarded. "Whenever you lawfully direct that costs be paid," it says to the surrogate, "you are at liberty unless prevented by some positive statutory restriction, to exercise your discretion as justice may require in directing that such costs be paid either by some party or parties to the proceeding or out of the estate or fund." Section 2558 provides that the award of costs in a decree is in the discretion of the surrogate, except in one of the following cases."

Then follow the exceptions:

1. When special directions respecting the award of costs are contained in a judgment or order made (*a*) upon an appeal from the surrogate's determination, or (*b*) upon a motion for

a new trial of questions of fact tried by a jury (in which cases costs must be awarded according to those directions).

2. When a question of fact has been tried by a jury. In such a case, unless an appellate court has given special directions, costs must be allowed to the successful party.

3. When there is a controversy over the probate of a will. The surrogate is prohibited in such a case from granting costs to unsuccessful contestants, save for certain specified exceptions.

Section 2560 declares that the costs of an appeal, where they are awarded by the surrogate, shall be the same as if they were awarded in the supreme court.

These two sections (2558 and 2560), when compared with section 2589, which will be presently quoted, and when the policy of the law, as it was clearly settled before the enactment of the Code is taken into consideration, will be found to demand a narrower interpretation than that which the present applicant seeks to put upon them. While they provide, among other things, for the adjustment in surrogate's decrees of costs in appeal proceedings, it is not their intention, as it seems to me, to give the surrogate any power to *award* such costs, in the strict sense of that term; in other words, they do not aim to enlarge the scope of his authority so as to enable him to *adjudge* that costs be paid when the court above has refused to award them or given no direction whatever, they are simply designed to establish the mode whereby the surrogate is enabled to exercise in respect to costs on appeal such limited authority as is conferred upon him by other provisions of law.

The two sections which are the immediate subject of discussion form a part of article 3 of title 2 of chapter 18 of the Code. The chapter treats of " surrogate's courts and proceedings therein." The title is devoted to " provisions relating generally to the proceedings in surrogates' courts *and to appeals from those courts."* The article is entitled, " Decrees and orders and the enforcement thereof. Costs and fees." The article which immediately follows treats solely of

" *appeals.*" This arrangement of topics is in thorough harmony with the view I have suggested, that sections 2558 and 2560 in the third article are intended to affect in no manner the question of the surrogate's right to award costs on appeal, but only to provide for their insertion in a decree in cases where they may be lawfully awarded.

The correctness of this view becomes very apparent upon reference to section 2589, one of the sections of article 4, which, as has been stated already, is devoted solely to " appeals."

That section provides that *the appellate court* may award to the successful party the costs of an appeal, or may direct that costs shall abide the event of a new trial, or of subsequent proceedings in the surrogate's court. The section further declares that in either case, the costs may be made payable out of the estate or fund, or personally by the unsuccessful party, as directed by the appellate court, or, if such a direction is not given, as directed by the surrogate.

This means, I take it, not that if an appellate court fails to award appeal costs the surrogate is at liberty to award them, but that if an appellate court does award costs and gives no direction whether the same shall be paid out of the estate or fund, or by the unsuccessful party, the surrogate may exercise his discretion in the particulars wherein the appellate court has failed to exercise its own.

This construction of section 2589 is in strict harmony with the interpretation I have put upon section 2558, and both sections are thus made accordant with the statutes in force before the Code was enacted, and with what must certainly be regarded as the most sensible procedure for regulating the award of costs on appeal.

Application denied.