Saturday,
December
24th.

## Pigott *against* Holloway.

## In Error.

A joint commission issued to London, in which the plaintiff named commissioners whose profession and particular residence he set out; and the defendant named A. B and C. D. " of London." The plaintiff's commissioners caused inquiries to be made for the commissioners of the defendant, and no such persons being found,

**E**RROR to the common pleas of *Montgomery*. *Holloway,* the plaintiff below, brought *indebitatus assumpsit* upon a judgment entered by warrant of attorney against *Pigott* in the common pleas of *Westminster*. A joint commission issued to *London* for the examination of witnesses; with which the plaintiff sent interrogatories to be exhibited to witnesses produced on his own behalf, and other interrogatories for the witnesses that might be produced on behalf of the defendant; and he named as his commissioners *Samuel Marshall*, of *Serjeant's Inn*, *Fleet-street*, in the city of *London*, serjeant at law, and *Vitruvius Lawes*, of *Red Lion* square in the county of *Middlesex*, barrister at law. The defendant sent interrogatories to be administered to the witnesses produced on his own behalf, and named as his commissioners, *Robert Thomas* esquire, and Mr. *Joseph Robinson*, both of the city of *London*. The commission, which was forwarded in *June* or *July* 1805, was executed in *January* 1806 by the plaintiff's commissioners only; who certified that, having caused due inquiries to be made after the residences of *Robert Thomas* and *Joseph Robinson*, named with them for executing the commis-

they executed the commission *ex parte*. *Held* that the commission was well executed.

Interrogatories, which are directed to be put to the witnesses on behalf of one party, need not be put to the witnesses of the other.

A subscribing witness to a warrant of attorney swore, that from his minutes he found he was present at a certain place on a certain day, being the day the warrant bore date, and that upon reference to the warrant he found his name in his own handwriting as an attesting witness, and that the seal appeared to have been taken from an engraving he then and still had; and from all these circumstances *he was convinced that he was present, and witnessed the execution of the instrument*. This is sufficient proof of the warrant to go to the jury.

sion, in order to give them notice thereof, and it appearing to them that no such persons were to be found, they had proceeded to the execution of the commission ex parte. They also attached to the commission the affidavit of *Faithful Croft*, sworn before *A. Chambre* at his chambers in *Sergeant's Inn, London*, stating that in pursuance of instructions from the plaintiff's commissioners, he had diligently made inquiries to learn the residences of Messrs. *Thomas* and *Robinson*, on the *American* walk in the *Royal Exchange*, at the houses of several *American* merchants, at the *New York* and *Carolina* coffeehouses, and at the general postoffice; and not being able to gain any intelligence of them, he left the outside cover of the commission containing a direction to all the commissioners, with a clerk at the postoffice, and requested him to inquire for them of all the postmen and lettercarriers, for the city of London and its vicinity; and that he was afterwards informed by the clerk, whom he believed, that he had called out their names two days in succession to all the lettercarriers; but their residence was totally unknown to them.

No witnesses were produced on behalf of the defendant; and the plaintiff's witnesses were examined only upon the plaintiff's interrogatories.

Annexed to the commission was a warrant of attorney dated 23d *May* in the 35th of *George* 3d, purporting to be signed by the defendant, and to be witnessed by *H. Martelli*, who, in answer to one of the plaintiff's interrogatories, swore that upon reference to his minutes, he found he was present at the *London* tavern in *Bishopsgate* street in the city of *London*, on *Saturday* the 23d day of *May* 1795; and upon reference to the warrant of attorney signed *Edward Pigott*, purporting to be a warrant of attorney from *Edward Pigott* of *Twyford* in the county of *Berks*, esquire, to the plaintiff, for securing the sum of 554*l.* and interest, there not appearing to have been any bond, *he found his name in his own handwriting subscribed thereto as the attesting witness to its execution;* and that the defeasance to such warrant of attorney was all in his handwriting, *and the impression of the seal appeared to have been taken from an engraving he then and still had; and from all these circumstances he was convinced that he was present and witnessed the execution of such instrument,* to which there was no other subscribing witness.

Upon the trial below, the depositions and answers under the commission were offered in evidence, generally, by the plaintiff; and they were objected to by the defendant, because they were taken ex parte, and because the defendant's interrogatories had not been put to the plaintiff's witnesses. But the court overruled both objections. The plaintiff then offered to read the warrant of attorney; to which the defendant objected, because the execution of it was not sufficiently proved by *Martelli's* deposition. But the court suffered the warrant to go to the jury; and sealed a bill of exceptions upon all the points.

*Frazer* for the plaintiff in error contended, that under the circumstances of the case, the nonattendance of the defendant's commissioners was fatal. The commissioners of the plaintiff made no inquiry themselves; but referred it to *Croft*, who sought among merchants for persons who do not appear to be of that description, and then turned the matter over to a clerk in the postoffice. Every thing he learned from the clerk is hearsay; he did not know a syllable of it to be true; and the obvious way to ascertain the truth would have been to swear the clerk or the lettercarriers. The neglect of such a precaution is strong to shew a design of excluding the defendant's evidence. *Croft* himself was not legally sworn. The oath was administered by one who does not set forth any authority; and the affidavit is therefore no more than an informal account of what another person told him, which should not have received the least credit from the court below.

The defendant's interrogatories should have been put to the plaintiff's witnesses, for whom from their nature they were designed, as well as for his own. At present the witnesses stand without cross examination, although the materials for it were in the commissioners' hands.

*Martelli* does not swear either that he saw, or that he believes he saw, *Pigott* execute the warrant of attorney; or that the signature is his handwriting. He merely swears that from his minutes he is convinced he witnessed its execution, which might have been by a person who forged *Pigott's* hand. To make a deed evidence, the execution of it must be proved by at least one witness, who saw it sealed and delivered by the party. The handwriting is one step; but although this be proved, or even confessed, it will not answer without proof of

the delivery, which is of the essence of the deed, and which can be proved only by a witness who saw it. *Abbott* v. *Plumbe* (*a*). *Com. Dig. Evidence B. 3. Bull. N. P.* 254. *Gilb. Ev.* 99. *Peake Ev.* 97. *Martelli* does not swear to the delivery, nor to the handwriting of *Pigott*, nor to its execution by him. All that he swears may be true, and yet the warrant no deed of *Pigott*. He even swears from minutes, and not from recollection refreshed by minutes. *Peake Ev.* 190.

*Milnor* and *Ross* for the defendant in error. The circumstances shew either fraud or gross negligence in *Pigott*. The residence and profession of the plaintiff's commissioners being accurately described, it was easy on his part to find them out, and to produce to them, both his witnesses and commissioners. On the other hand the profession of his own commissioners not being set forth at all, and their residence stated to be merely in *London*, where without further description it would be hopeless to look for them, nothing can, be imputed to the plaintiff for not finding them. If it rested only here, the objection would be of no avail; for the ex parte execution would be owing to a loose description by the defendant, who by diligence might have remedied the evil, and whose duty it was to do it, and not ours. The plaintiff is not to lose the benefit of testimony, by the laches of the opposite party. But further. The commissioners were sought for among merchants, and at the general post-office, and an affidavit made that the inquiries were futile. The very names are calculated to increase the difficulty. So that it is clear there was something more than negligence.

The answer to the second objection is obvious. The defendant directed his interrogatories to be put to his own witnesses, and he produced none. It would have been contrary to instructions if the commissioners had exhibited them to the witnesses of the plaintiff.

We do not argue that the deposition of *Martelli* conclusively proved the warrant of attorney, but that the proof was sufficient to go to the jury; and *Park* v. *Mears* (*b*) is a plain authority for this distinction. If *Martelli* was quibbling, the jury might have disbelieved him; but if he was not, the warrant was sufficiently proved. After the lapse of eleven years, he was right

(*a*) *Doug.* 205.  (*b*) 3 *Esp.* 171.

1808.

PIGOTT
v.
HOLLO-
WAY.

to speak cautiously. He gives the ground of his belief; and he concludes by saying, not that his minutes prove this or that, but that he is *convinced* that he witnessed the execution, which includes every thing. To say that it might have been executed by some one else, is deciding upon the effect of the evidence, which was for the jury. There have been many instances in our own courts, where such proof has gone to the jury. In a case *ex parte Hurry and Lawerswyler* in the district court, the witness swore that he did not recollect the execution, but that he knew his own handwriting, and would not have signed unless he had seen the execution of the deed. It went to the jury. So in the *Lessee of Roberts* v. *Beatty*, where a subscribing witness to the will of *Jane Roberts* swore to his signature, but did not recollect to have seen the testatrix sign it, nor did he know her handwriting. And the like in *Neff* v. *Neff* in this court.

*Reply.* The case of *Park* v. *Mears* is not to the purpose. There the witness did recollect that the obligor acknowledged his signature; and he attested it at the request of a person then with the obligor. But the question was whether the execution had not been previously completed before a witness in another room, and so this acknowledgment merely in the light of a subsequent confession, which would not be evidence. In *Hurry's* case the witness swore that he should not have signed it, unless he had seen the party execute it; and that was probably the case in *Roberts* v. *Beatty*. But here the witness does not swear to his practice of not attesting except when he saw the party execute the instrument, nor does he swear even to a belief that he saw *Pigott* execute it.

TILGHMAN C. J. This cause comes before us on a writ of error to the common pleas of *Montgomery* county, founded on a bill of exceptions. *Thomas Holloway* the defendant in error was plaintiff below. His action was founded on a judgment obtained against the defendant in one of the courts of *England*. A commission to take depositions of witnesses residing in *England* was moved for by the defendant and issued, in which both plaintiff and defendant joined. Each party exhibited interrogatories. The plaintiff filed interrogatories to be administered to his own witnesses, and also to the witnesses of the defendant. The defendant filed interrogatories to be administered

to his own witnesses only. Two commissioners were appointed on each part, and the commission was sent forward directed to the four commissioners. It was returned executed by the plaintiff's commissioners only, who certified that after diligent inquiry and search, no such persons, as those who were named commissioners for the defendant, could be found. Annexed to the return of the commission was an ex parte affidavit of *Faithful Croft*, making particular mention of the steps taken by him to discover the defendant's commissioners. The plaintiff's commissioners are described in the commission both by their profession and place of abode. The defendant's are only described as being of *London*.

Two objections were urged by the defendant to the admission of the depositions taken on this commission as evidence on the trial. 1st. That the execution of the commission by the commissioners of the plaintiff only, was irregular. 2d. That the interrogatories of the defendant ought to have been administered to the witnesses produced on the part of the plaintiff. On both these points the court below gave an opinion against the defendant, and permitted the depositions to be read in evidence.

The defendant then objected to the reading in evidence of a warrant of attorney, said to be executed by him, annexed to the return, and referred to in the deposition of one of the witnesses, who swore that his name subscribed as a witness was of his own handwriting, as was also the defeasance to the warrant of attorney; that on having recourse to some private minutes of his own he found that on the day of the date of the said warrant he was at a certain house in *London*, where he supposed it was executed; that the seal was an impression from an engraving which belonged to him; and from all these circumstances he was convinced he was present and witnessed the execution of the said instrument; and that there was no other subscribing witness. The court below were of opinion that on this evidence the warrant of attorney might be read to the jury.

These several objections are stated in the bill of exceptions, on which this court is now to decide.

As to the irregularity of the execution of the commission by the plaintiff's commissioners only, it appears to me that, circumstanced as matters were, an ex parte execution was not improper. It was the defendant's fault that his commissioners had no share in the execution; he was negligent in not describing

them by their profession or occupation, and place of abode. Besides it does not appear that he took the proper measures for executing the commission. He had a right to forward it himself, and should have done so. If he did not know where his own commissioners resided, he should have sent the commission to some friend or agent, with directions to find them out; and he should have taken care to give notice to the plaintiff's commissioners where his own were to be found. The court cannot avoid observing that this would have been very easy, as the plaintiff's commissioners were men of notoriety; one of them Mr. *Marshall*, a serjeant at law and author of the treatise on insurance; the other Mr. *Lawes*, a barrister. The commission is dated in *May* 1805, and executed in *January* 1806; so that there was ample time for taking every necessary step to insure the attendance of the defendant's commissioners. It would be extremely hard if, after this lapse of time, and this carelessness of the defendant, the plaintiff should be deprived of the benefit of his testimony, merely because the commission was not executed by men who were sought for and could not be found.

The second objection is answered by adverting to the interrogatories filed by the defendant. They are directed to be administered to his own witnesses. It is much to be regretted, if any material facts have been lost for want of a cross examination of the plaintiff's witnesses. But the commissioners acted with strict propriety in not propounding any questions on the part of the defendant to the plaintiff's witnesses, because the defendant had not directed any such questions to be put.

As to the third objection, which goes to the reading the warrant of attorney in evidence, I am clearly of opinion the court below were right.

Whether the evidence contained in the deposition was sufficient to establish the execution of the warrant of attorney, was for the consideration of the jury; but surely there was enough to authorize the court to submit it to them. Few men can swear positively to the sealing and delivery of an instrument after any considerable time. In this instance the witness mentioned strong circumstances from which he was convinced that he attested the execution; he knew his own handwriting and his own seal. But the defendant's counsel has urged, that he has not said that the signature of the defendant's name

was the defendant's writing, nor that the instrument was executed by the defendant. True, he has not; his expressions are " that he is convinced he was present, and attested the execu- " tion of the instrument." It is possible the witness may have quibbled. He might have seen the instrument executed by *some other person* who forged the defendant's name. But this kind of quibbling approaches so near to perjury, that none but a rogue would be guilty of it. If his character had been proved to be bad, the jury might have disregarded the evidence. But unless his character was impeached, I should think the jury well justified in believing, that the instrument was executed by the defendant. On this point however they were left to judge. The objection is, that the court ought not to have suffered them to exercise any judgment on it.

My opinion is, that the court of common pleas decided rightly, and that their judgment be affirmed.

YEATES J. of the same opinion.

SMITH J. Were the objections of the plaintiff in error to the regularity of the commission to prevail, it would be in the power of an artful defendant to delay a trial for a long period, by naming commissioners not in existence, or not to be found. The defendant below first applied for the commission; the plaintiff joined; regularly the defendant should have given notice to the plaintiff's commissioners of the time and place of taking the depositions, as they not only did exist, but were well known, and the place of their residence described in the commission; while that of the defendant's commissioners was carefully concealed; nor has it been to this day disclosed. It is impossible not to see at least an affectation of delay in the defendant's conduct. As to the neglect of examining the plaintiff's witnesses upon the defendant's interrogatories, the defendant did not direct any questions to be put to them. In all the proceedings of the lower court, I think they were right, and concur in the affirmance of the judgment.

BRACKENRIDGE J. concurred with the chief justice.

Judgment affirmed.