Keeney v. Whitmarsh.

---

KEENEY and others, appellants, *vs.* WHITMARSH, respondent.

Where the infant heirs of a testator have a general guardian in this state, the citation to attend the proof of the will, before the surrogate, should be served upon such general guardian, notwithstanding his interest is adverse to that of the infants.

Where a portion of the next of kin of a testator are married women, the citation to attend the proof of the will may be served on them, without their husbands. Though it is the most prudent course, *it seems,* to serve the citations on the husbands of *femes covert,* as well as on themselves.

Where a testatrix subscribed her will, (by making her mark,) immediately *after* she had declared the instrument to be her last will; *Held,* that this was a valid execution; both acts being, in legal contemplation, done at the same interview and at the *same time,* within the meaning of the statute.

APPEAL from a decision of the surrogate of Onondaga county, admitting the will of Arvilla Whitmarsh, to probate. The testatrix died March 23, 1852, leaving a will, which the executor therein named (Hiram Whitmarsh) propounded for proof before the surrogate, on the 6th day of April, 1852. The testatrix left thirteen children, three of whom were minors and unmarried. Hiram Whitmarsh was their general guardian. Six of the children were married females. The others were adult males or adult unmarried females. The citation to attend the proof of the will, appeared to have been served on the general guardian of the infants, but not on the infants themselves; and no special guardian or guardian ad litem was appointed. The citation was also served on the married females, but not on their husbands.

Keeney *v.* Whitmarsh.

At the hearing of the matter before the surrogate, only John A. Keeney (the husband of one of the daughters) appeared to contest the will. He professed to appear for his wife. The proof before the surrogate left no doubt of the capacity of the testatrix, or that she perfectly understood the provisions of the will. The will was executed as follows: one of the witnesses to the will wrote her name under it, by her direction, and she then made her mark. This was done in presence of both the attesting witnesses. *Immediately before* making her mark, she declared the instrument to be her last will and testament. Two witnesses attested the will, at her request. All these circumstances transpired *at one time,* and within the space probably of one minute. The will being thus executed, she directed one of the witnesses to keep it as her will. The surrogate admitted the will to probate; and from his decision this appeal was taken, by four of the married female heirs, with their husbands, and one adult unmarried daughter.

*V. Birdseye,* for the appellants.

*Geo. F. Comstock,* for the respondent.

*By the Court,* GRIDLEY, J. I. The appellants insist that the decree of the surrogate is erroneous, on the ground, 1st. That that officer never acquired jurisdiction over the persons of the infants and married women, next of kin to the testatrix, by the service of a citation on them in legal form, and by the appointment of a guardian, or next friend, to take care of their interests on the hearing; 2d. On the ground that the will was not legally executed. We will examine these objections in their order. First, as to the question of jurisdiction.

(1.) The infants had a *general guardian,* who was served with a citation, and who appeared on the hearing for them. The appellants contend that as the guardian was the brother of the infants, and by the will the females received less than the males, the general guardian was interested against the infants; and for this reason the citation should have been served on the infants

themselves; and a guardian *ad litem* should have been appointed for the infants on the hearing. The surrogate pursued the directions of the statute in relation to the minors. It was his duty to inquire and ascertain " the names and places of residence of the heirs, widow and next of kin of the testator; and whether any, and which, of the persons mentioned in the preceding section, are minors; and the names and places of residence of their general guardians, if they have any; and if there be no general guardian in this state, the surrogate shall, by an order to be entered, appoint a special guardian for such minor to take care of his interest in the premises." (*Laws of* 1837, *ch.* 460, §§ 4 *and* 5. 2 *R. S.* 248, §§ 48 *and* 49, 4*th ed.*) In ascertaining the facts, as directed by the statute, the surrogate learned that the infants *had a general guardian* in the state; ánd he neither had, nor could have, any knowledge of any supposed hostile interest to the infants, growing out of the provisions of the will, which he had not yet seen. He accordingly issued his citation for such guardian, and did not appoint a special guardian as he would have done if there had been no general guardian. These acts, the omission of which is charged as erroneous, on the part of the surrogate, were all required to be done before the citation was issued, and before the surrogate could regularly know the objections to the course he was pursuing. We think the surrogate had no right, even if he had known all the facts as they appear on the return in this case, to supersede the statute, if he found it defective, or to disobey its injunctions, because it made no provision for a case of hostile interests, like that of the guardian and the infants. If any real injury had been done to the interests of the infants, by the guardian's neglect, he would be responsible to the infants. But the surrogate, who pursued the exact directions of the statute, and when he could not know of the objections that existed to that course, did not lose his jurisdiction by obeying the statute. He could not have removed the guardian without a proceeding having been instituted for that purpose, however improper that appointment may have been. He must regard him as the legal guardian, and proceed as in

any other case where a general guardian had been appointed before.

(2.) The surrogate also directed the citation to the married women, and the service was proved to have been made on them, without their husbands. In this also, he pursued the statutory direction. (*Laws of* 1837, *ch.* 240, § 7. 2 *R. S.* 248, § 50, *4th ed.*) In this case, the provisions in the will in favor of the married women, constituted their separate estate, as the will was made since the act of 1848 and 1849, in relation to the property of married women. And by section fourteen of the code, a married woman *may* sue alone, when the action concerns her separate property. If she may sue alone, in an action by the laws of the land, she may, by analogy of the law in this proceeding, be cited as next of kin, without her husband, to attend the proof of a will, in a case where the statute has made no provision for citing her husband. If she be cited, she can give the citation to her husband, if she desires to do so. The question arose previous to the enactment of the code, before the chancellor, in 1843, in the case of *Bibby* v. *Myer*, (10 *Paige*, 220,) and he seems inclined to think that as the husband is not the next of kin, and the statute only requires the citation to be served on the next of kin, a service on the wife is a legal service. This decision, it will be seen, was made before the acts of 1848 and 1849 were passed, and the chancellor dismissed the application to set aside the decree, because the application was made by Myer alone, without his wife, saying that the application should have been made by her husband, in her name as well as his own. Though we think it the most prudent course to serve a citation on the husbands of *femes covert*, as well as on themselves, yet we do not think it is required by the act, either expressly or by implication ; and especially, since the husband, by the recent statutes, has not even an equitable interest in the legacies given by the will ; and as the law of the land recognizes the wife as competent to sue alone, in an action concerning her separate estate, we cannot hold that the decree is void for want of jurisdiction. There is no force in the argument that the proceeding is an *action* under the code, and for that reason the proceedings to

Keeney *v.* Whitmarsh.

appoint a guardian for infants have superseded the provision for serving a citation on the general guardian, in the act of 1837. It is not a "proceeding for the *protection* or *enforcement* of a right," within the meaning of the code. It was not an *adversary* proceeding. It does not seek any *relief* against the parties, as in the case of an action to recover a sum of money, or specific real or personal estate. If an action, then it must be commenced by summons and complaint, and the citation has become obsolete. This proceeding is moreover expressly saved from the operation of the code, as one of the special proceedings from which its application is excluded.

II. The will was properly executed. The alleged error was in the testator's making her mark (her name having been signed by one of the witnesses at her request) immediately after she had declared the instrument to be her last will. The statute directs that the testator, *at the time of making such subscription*, or at the *time of acknowledging the same*, shall declare the instrument to be his last will and testament. This was at the same *interview*, and at the *same time*, within the meaning of the act. This point has been expressly decided in the third district, and we adopt the principle of the decision and reasoning of the court, as being a sound and reasonable exposition of the statute. (*Roe* v. *Roe*, 2 *Barb. S. C. Rep.* 200.)

We affirm the decree of the surrogate, with costs.

[Oneida General Term, January 3, 1853. *Gridley, Pratt, W. F. Allen* and *Hubbard*, Justices.]