## MORRIS and others *vs.* KNIFFIN.

It is not an insuperable objection to the valid execution of a will that one of the subscribing witnesses makes his *mark*, instead of writing his name. It is still a signing of his name, or subscription, within the meaning of the statute in regard to the execution of wills.

But such an attestation may render the establishment of the will more difficult, in case of the death of the witness; for the difficulty or impossibility of authenticating the *mark*, might detract much from the presumption of due execution which arises from an apparent compliance with the statute, evidenced by the will itself, by an attestation clause in due form reciting a compliance with the statute formalities, and the signatures of the testator and the subscribing witnesses in their appropriate place upon the instrument itself.

Where a witness who had attested the execution of a will by making his mark, was examined at the trial, (the other attesting witness being dead,) and although his recollection was very imperfect and he failed to make out a due execution of the will, yet he stated nothing inconsistent with the theory of a due execution of it, but much in its favor, and the other evidence, in connection with his, led strongly if not irresistibly to the conclusion that the will was duly executed in all the particulars required by law; *Held,* that adding to this the legal presumption of the observance of those formalities, which would have been supplied by the evidence of the deceased witness, and which arose from his death and apparently due attestation of the will, it was a case manifestly proper to be submitted to the jury, and fit for their consideration.

*Held also,* that this was a case in which the judge should, for the purpose of presenting the question of due execution to the jury, have permitted the paper to be read in evidence, or read before the jury, and then have submitted the question of due execution, to them, upon the facts of the case.

THIS was an action to recover the possession of a farm situate in the town of Liberty, Sullivan county, containing about 100 acres; and also to recover the rents and profits. The plaintiffs claimed to own and to be entitled to the possession of the premises as *heirs at law* of James Morris, who, it was admitted by all parties, died seised of the lands in controversy, in April, 1859. The action was originally commenced against the defendant and Mary Morris, widow of James Morris, deceased. Mrs. Morris died in December, 1860, and by order of the court the action was continued against the present defendant. Mary Morris claimed to

Morris *v.* Kniffin.

own the premises as *devisee* under the will of James Mor-
·ris, and the defendant, Kniffin, claimed to occupy them under
and in conjunction with her. The important question was
as to the due execution of this will. The plaintiffs proved,
among other things, that James Morris had only three chil-
dren, two of whom survived him, viz. the plaintiff, Christo-
pher S. Morris and Catharine Acker. His other child, Ann
Deitz, died before her father, leaving her surviving Hiram
Deitz, Rachel C. Krome and Christopher Deitz, (not a party
to this suit, and not heard from for the last five years,) her
only children and heirs at law. The plaintiffs further proved
that James Morris, deceased, never had any children by Mary
Morris, she being his second wife ; and that possession of the
premises had been demanded and refused, before the com-
mencement of this suit. It was agreed, on the trial, between
the court and the counsel for the respective parties, that the
proof should be confined to the fact of the formal execution
of the will, as provided by statute. The defendant produced
the will of James Morris, executed by him, under seal, with
the following attestation clause, viz : " The above instru-
ment, consisting of one half sheet, was now here subscribed
by James Morris, the testator, in the presence of each of us,
and was at the same time declared by him to be his last will
and testament, and we at his request sign our names hereto
as attesting witnesses.

AUGUSTUS DODGE.
his
FRANCIS A. + LE ROY.
mark

Both of Liberty in
the Co. Sullivan."

The defendant made sufficient proof of the execution of the
will, if the instrument had been allowed by the presiding
·judge to .be read to the jury, to go to the jury upon all the
questions of fact necessary to the due exection of a will under
our statutes. After making such proof he offered the will in
evidence. The plaintiffs objected to it, on the ground " that
·it had not been proved to have been executed in conformity
with the provisions of the statute, or any of them ; that it was

not proved to have been subscribed by the testator at the end; that it was not proved to have been subscribed or acknowledged by the testator in the presence of each of the attesting witnesses; that there was no proof that at the time of subscribing the will, or acknowledging the same, the testator, in the presence of each of the attesting witnesses, declared the instrument so subscribed, to be his last will and testament; that there was no proof that the attesting witnesses, or either of them, signed it at his request, or that Le Roy ever signed it; that a marksman cannot be, and is not, a subscribing witness, within the meaning of the statute." The court sustained the objection, and excluded the will, and the defendant excepted. The evidence of the execution of the will was substantially as follows: The handwriting of the testator was sufficiently proved. Augustus Dodge, one of the attesting witnesses, was dead at the time of the trial. His death and handwriting were sufficiently proved. Le Roy was examined as a witness, on the trial. He was over 76 years of age; was forgetful; had been losing his memory for ten years. He recollected being present at Morris' on a visit at the time the will was drawn, but did not remember much that occurred there. He did not know his mark, and "there was no *peculiarity* in it by which he could know it." He went out with others on the stoop and remained there with them when Gildersleeve prepared the will; and he went back in the house with Dodge, the other attesting witness, before the rest of the company went in. He and Dodge both went to the bed where the testator lay. Dodge's name, in his own handwriting, appears by the will. Le Roy could neither write, nor read writing. The will had been prepared by Gildersleeve while the attesting witnesses were on the stoop, and the attestation clause drawn and read to the testator. Gildersleeve had told the testator "that he must have two subscribing witnesses; that it was *necessary* to make the will valid." Gildersleeve "went there in good faith, and intended that a *valid* will should be made;" and knew that two sub-

scribing witnesses were required to make it so. The will was found with the family of Dodge, in a sealed envelope marked. "James Morris. His will." Augustus Dodge handed it to his wife with instructions "to take good care of it." She kept it with his papers; it was kept with other valuable papers. After Dodge died, Morris called to get his will; he went and got it, and called it "his will;" said "he had examined it, and it was right.". After his death it was found in his house, opened, and read in the presence of the plaintiffs and defendant.

At the close of the evidence, the defendant objected to a recovery, on the ground that the plaintiffs had not proved a demand made, previous to the commencement of this action, that they be let into the possession of their undivided interest in the premises. The court held that the general demand, made by Christopher S. Morris, was a demand for all the tenants in common, and that the claim of title set up by the defendant amounted to an ouster; to which ruling the defendant excepted.

The cause was tried before Justice GOULD and a jury, at the Sullivan circuit, in September, 1861, when a verdict was rendered in favor of the plaintiffs as to eight-ninths of the land, and for $100, for rents and profits. On motion of the defendant's attorney, the court directed that a motion for a new trial, upon a case, with exceptions, be heard in the first instance, at a general term.

The case was submitted on printed points, by

*James Matthews*, for the plaintiffs.

*A. J. Bush*, for the defendant.

HOGEBOOM, J. I do not regard it as an insuperable objection to the valid execution of a will that one of the subscribing witnesses makes his *mark*, instead of writing his *name*. It is still a signing of his name, or subscription,

I think, within the meaning of the statute in regard to the execution of wills. (2 *R. S.* 63.) It has been so decided to be in regard to the execution by the *testator*, (*Chaffee* v. *Baptist Miss. Conv.*, 10 *Paige*, 85; *Keeney* v. *Whitmarsh*, 16 *Barb.* 141;) and the reason of the rule applies equally to the case of subscribing witnesses. Indeed, as to the latter, a mark has been held to be a good subscription. (*Mechan* v. *Rourke*, 2 *Bradf.* 385.) It might render the establishment of the will more difficult, in the case of the death of such a witness; for the difficulty or impossibility of authenticating the *mark* might detract much from the presumption of due execution which arises from the apparent compliance with the statute, evidenced by the will itself, an attestation clause in due form reciting a compliance with the statute formalities, and the signatures of the testator and the subscribing witnesses in their appropriate place upon the instrument itself. (*Remsen* v. *Brinckerhoff*, 26 *Wend.* 325. *Butler* v. *Benson*, 1 *Barb. S. C.* 538. *Lewis* v. *Lewis*, 1 *Kern.* 224.)

But this is a case where the subscribing witness is living, and was examined at the trial; and although his recollection is very imperfect and fails to make out a due execution of the will, he states nothing inconsistent with the theory of a due execution of it, but much in its favor. The other evidence in the case, taken in connection with it, leads strongly if not irresistibly to the conclusion that the will was duly executed in all the particulars required by law, namely: 1. That it was subscribed by the testator, or such subscription acknowledged, in the presence of the attesting witnesses. 2. That it was declared or acknowledged by him to the attesting witnesses as his will. 3. That the witnesses signed and attested in the presence and at the request of the testator. (*Jauncey* v. *Thorne*, 2 *Barb. Ch. R.* 40. *Nelson* v. *McGiffert*, 3 *id.* 158. *Torry* v. *Bowen*, 15 *Barb.* 304. *Hoysradt* v. *Kingman*, 22 *N. Y. Rep.* 372.)

When to this is added the legal presumption of the observance of these formalities, which would have been supplied by the evidence of Dodge, and arises from his death and apparently due attestation of the will, I think it presents a case, on the part of the defendant, which would have deservedly commanded great attention if not a favorable verdict at the hands of the jury, if the case had reached them. (*Jackson* v. *LeGrange*, 19 *John.* 386. *Nelson* v. *McGiffort*, 3 *Barb. Ch. R.* 162, 3. *Chaffee* v. *Baptist Miss. Conv.* 10 *Paige*, 90. *Scribner* v. *Crane*, 2 *id.* 149. *Brinckerhoof* v. *Remsen*, 8 *id.* 499.)

It seems to me to have been manifestly a case proper to be submitted to the jury, and fit for their consideration.

The doubt which has embarrassed me in the case is, whether the judge was not made the primary and, for the purposes of the admissibility of the will, the exclusive judge in regard to it; and whether, if he decided to exclude it upon evidence susceptible of a construction favorable to his decision, it was not conclusive. But it seems to me, on the whole, one of those cases where the judge should, for the purpose of presenting the question of due execution to the jury, have permitted the paper to be read in evidence or read before the jury, and then submitted the question of due execution to them upon the facts in the case. And such, I think, although it is not very clearly expressed, was the intention, and should be construed to have been the offer and demand of the defendant. When he offered the will in evidence—not as conclusive evidence—not to preclude the consideration by the jury of the question of its due execution—not to submit that question absolutely to the presiding judge—but to read the same in evidence like a note, or any other paper whose authenticity is questioned, but as to which competent and prima facie evidence of execution had been given, for the purpose of laying the same before the jury upon the whole case, so that from the paper itself which furnished on

its face *some* evidence of due execution, in connection with the residue of the testimony, they might draw the appropriate inferences on the questions of fact connected with the execution.

In 2 *Phil. Ev.* 503, *note,* (*Albany ed. of* 1859,) it is said, "If there be no evidence of authenticity, the instrument cannot be read to the jury; but if there be any fact or circumstance tending to prove the authenticity, from which it might be presumed, then the instrument is to be read to the jury, and the question, like other matters of fact, is for their decision. (*Per Duncan, J. delivering the opinion of the court in Sigfried* v. *Levan,* 6 *Serg. &. Rawle,* 308, 312. *Dodge* v. *Bank of Kentucky,* 2 *Marsh. Ky. Rep.* 613. *Curtis* v. *Hall,* 1 *South. R.* 148. *Stahl* v. *Berger,* 10 *Serg. & Rawle,* 170. *Pigott* v. *Halloway,* 1 *Binn. Rep.* 442, 3. *The President, Managers and Company of the Berks and Dauphin Turnpike Road* v. *Myers,* 4 *Serg. & Rawle,* 12.)"

I think a new trial should be granted, with costs to abide the event.

PECKHAM, J. concurred.

GOULD, J.   I am very willing that this course should be taken; though I doubt its correctness.

New trial granted.

[ALBANY GENERAL TERM, December 2, 1861.   *Gould, Hogeboom* and *Peckham,* Justices.]