## Hamsher *versus* Kline.

1. A witness said in his examination in chief, that the defendant had made a statement and exhibited papers to him; the defendant had a right to a statement of all that took place, although the plaintiff was not present and it was *post litem motam.*

2. A witness stated that a signature as witness to a paper to which was the plaintiff's name, was the witness's signature, but that he did not know that the plaintiff was the person who signed in his presence. The paper was receivable in evidence.

3. If there is any evidence however slight, tending to prove the formal execution of a deed, it is sufficient to entitle it to go to the jury.

4. Identity of name is sufficient in the first instance as presumptive evidence of identity of person.

[Hamsher *v.* Kline.]

5. When a witness to an instrument has lost all memory of a transaction, the same rule applies as if he were dead, was out of the state, or had become interested.

6. The presumption primâ facie is that what a witness has attested has taken place in his presence.

7. A receipt in full is primâ facie evidence of a settlement, but not conclusive. It may be attacked on the ground of fraud, mistake or ignorance of his legal rights in the party who gave it.

8. If the relation between the parties is one of trust or confidence, a receipt of itself may be insufficient.

March 6th 1868. Before STRONG, READ, AGNEW and SHARS-WOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 115, to January Term 1868.

This was an action on the case, by Jacob Hamsher against William O. Kline, commenced December 1st 1860.

The 1st count charges the defendant with neglect of duty as the plaintiff's attorney at law; the 2d, that he purchased certain real estate on which was a lien in favor of the plaintiff which the defendant was employed to collect, and therefore he became liable to pay the amount of the lien; the 3d, that the defendant was employed as agent and attorney of the plaintiff to collect a debt, that he received from the sheriff moneys on account of the debt, and had not paid them over; the 4th, that he was employed to settle an account with debtors of the plaintiff; that he received large sums of money from them and had not accounted; and also the common money counts.

It appeared on the trial that the plaintiff held a mortgage for $2500 against Peter B. Knechel and others on a farm in the state of Delaware; that a scire facias on the mortgage was sued out, George P. Fisher, Esq., being the attorney on the record; and judgment obtained May 2d 1857 for $2777.08. Under this judgment the land was sold by the sheriff on the 20th of August 1857, to the defendant for $1900, and the deed made to him on the 21st of November then next.

The plaintiff gave evidence, by the deposition of George P. Fisher, that he had been retained and acted as counsel on behalf of the plaintiff to collect the mortgage; that the defendant employed him, and at the time stated that he was attorney for the plaintiff; that before the sheriff's sale on the mortgage the defendant consulted Mr. Fisher whether a certain mill, &c., was subject to be sold under the mortgage; that the question as to the mill arose as follows: the mortgagors had purchased a mill and fixtures which they wished to put on the mortgaged premises; the vendor of the mill was not willing to sell to them without security for the payment; that Charles Warren became security on condition that Hamsher would secure him by releasing the mill, and about two acres on which it was to be put, from the lien of his

mortgage; that Hamsher did release; that witness stated the facts to the defendant but did not give a definite opinion as to their effect; that afterwards, before the confirmation of the sale, the defendant informed the witness that he had bought the farm and claimed that the mill was included in the purchase; that he and the plaintiff had bought the property together, and that witness had been instructed by the defendant to draw the deed to him alone, as he had bought the plaintiff's interest.

The plaintiff gave evidence by Charles Warren that the defendant and plaintiff were present at the sheriff's sale. The sheriff gave notice that the mill and land occupied by it, were not to be sold with the farm; that the farm would have brought $2000 additional if it had been known the mill was to go with it; that at the time of the sale the defendant said to witness that he did not wish him to say that by paying $800 the purchaser of the farm could hold the mill, he did not wish it publicly known,— Hamsher was not present; that the defendant had been advised by counsel in Delaware that no one could take advantage of the release but Warren. At the time of the sale there were $733.33 of the purchase-money of the mill, with interest, due.

The plaintiff also gave in evidence the deposition of John Green, the sheriff who had sold the land. On his re-examination in chief he said: "I had an interview with Mr. Kline about a month ago at my house, when he showed me the papers marked A and B, which led me to thinking, and refreshed my memory as to the whole matter of the sale. At that time I think Kline showed me a check or a note for somewhere between $700 and $1000, payable to the order of Mr. Fisher. That check or note confirmed me in the belief."

On cross-examination the witness was asked to state all that the defendant said when he exhibited the papers.

The witness answered: "He presented the papers to me and asked me if that was my signature on paper B. I said it was. He went on and talked about the matter, I can't remember all he said. He stated he had paid Mr. Hamsher $1150, the amount he had bargained for as his share of the farm, and he asked me to come up to the city to give my testimony. He spoke about other moneys he had paid on account of the property, but I don't remember the amount. Mr. Hamsher was not present at this last interview with Kline, which was about a month ago at my house."

The reading of this part of the deposition was objected to by the plaintiff, but received by the court, and a bill of exceptions sealed.

The defendant, on his part, gave evidence that the plaintiff spoke to the defendant about taking the mortgage for collection, that the defendant replied he did not practise in Delaware; that

[Hamsher *v.* Kline.]

plaintiff would have to get a lawyer there, defendant named several and the plaintiff himself selected Mr. Fisher; that he and the defendant had purchased the land together and that defendant paid $950, one-half the purchase-money, at the sheriff's sale; that Mr. Fisher, as Hamsher's attorney, on the 23d of November 1857, receipted to the sheriff for the purchase-money; there was evidence also that Hamsher had received information, on the day of the sheriff's sale, from Kline in relation to the claim of Warren on the mill, and that by making arrangements with Warren the land could be bought cheap.

The defendant called A. S. Martin, to whom the following paper was shown:—

"Philadelphia, August 20th 1857.

"The undersigned do hereby become liable to Charles Warren for any loss or payment of any money by reason of the said Warren having gone surety for the faithful payments of certain sums of money or instalments upon a certain mill erected upon my premises in Kent county in the state of Delaware, by Peter B. Knechel and others, which instalments have been paid saving the last, being about seven hundred and forty or fifty dollars, and which I have agreed to save the said Charles Warren harmless, and do hereby agree to pay the same in case it is not paid by Peter B. Knechel and others, and do hereby further agree to secure the said Charles Warren by empowering him in case the said last instalment is not paid to authorize and empower him to enter a judgment forthwith against said estate for said amount.

"In witness whereof I do hereby affix my hand and seal the day and year above written.

Witnessed,      }
A. S. MARTIN,  }    (Signed)    JACOB HAMSHER.    [SEAL.]"

Martin said the name as witness was his signature. And on cross-examination said that he did not know whether the plaintiff was the person who signed the writing in his presence.

The plaintiff objected to the admission of the paper, it was admitted by the court, and a bill of exceptions sealed.

The defendant then offered the following paper and proved its execution:—

"I, Jacob Hamsher, of the city of Philadelphia and state of Pennsylvania, do hereby acknowledge to have received of William O. Kline, the sum of eleven hundred and fifty dollars, in full, of the purchase-money of a tract of land, with the buildings and improvements thereon erected, situate in Kent county in the state of Delaware, adjoining lands of Alexander Hughes and others, and sold by Sheriff Green upon a levari facias, at the suit of

[Hamsher *v.* Kline.]

Jacob Hamsher *v.* Peter B. Knechel and others. Witness my hand this 10th day of December, A. D. 1857.

Witness, 

WILLIAM O. KLINE, JR.  } JACOB HAMSHER.  [SEAL.]"

The plaintiff objected to its admission as not being legal evidence in this action of a settlement between the parties, for the purchase-money of the tract of land therein referred to, or the payment of the money named therein; the court overruled the objection, admitted the evidence and sealed a bill of exceptions.

Defendants gave evidence that in a trial in relation to this land in 1861, the plaintiff testified: " I once owned this land in Delaware; it was sold by the sheriff; I have no interest in it now; I had an interest in it after the sheriff's sale; Mr. Kline bought it for himself and myself."

There was other evidence on both sides and both parties submitted points, which the court answered.

There was a verdict for the defendant. The plaintiff took a writ of error.

His first five assignments of error were to the admission of evidence; the remainder to the instructions of the court.

*A. M. Burton,* for plaintiff in error.—As to the admission of the part of Green's deposition which was objected to, he referred to Muirhead *v.* Fitzpatrick, 5 W. & S. 508; Wilson *v.* Davis, Id. 523; Urket *v.* Coryell, Id. 84; Evans *v.* Mengel, 1 Barr 82; Gilchrist *v.* Rogers, 6 W. & S. 488; Miller *v.* Cresson, 5 Id. 301.

*T. K. Finletter* and *W. L. Hirst,* for defendant in error, referred to 1 Greenl. Ev., § 575; 2 Id., § 295; Piggott *v.* Holloway, 1 Binn. 436.

The opinion of the court was delivered, March 19th 1868, by

SHARSWOOD, J.—In the court below this was an action in which the plaintiff claimed that the defendant, as his attorney, had undertaken to collect a mortgage held by him on a farm and tract of land in the state of Delaware; that contrary to his duty, at the sheriff's sale under the mortgage, he had concealed from the bidders a material fact, which would have enhanced the price; that he had become the purchaser himself at the sale, for a sum much below what it would otherwise have brought; and that he had not accounted for the purchase-money. On the other hand the defendant alleged, and gave evidence tending to show, that he had not been employed by the plaintiff as his attorney, but as his agent merely, and without compensation; that he had engaged counsel in Delaware to sue out the mortgage; that in company with the plaintiff he had at-

7 P. F. SMITH—26

[Hamsher *v.* Kline.]

tended the sale; that the fact, the concealment of which from the bidders is now complained off, was communicated to the plaintiff, and that they agreed to buy the property in partnership. He alleged further that the premises were purchased under this arrangement by him; and that he had paid his half of the bid in full; and that the attorney of record settled and receipted on the sheriff's docket for the whole sum. The sheriff's deed to the defendant Kline was dated November 24th 1857, and the settlement on the sheriff's docket November 23d 1857. On December 10th 1857 Kline bought of the plaintiff his interest in the premises; a receipt for the agreed price under the hand and seal of Hamsher was given in evidence; and it was also shown that in another proceeding, four years afterwards, in which Hamsher was examined as a witness, he had testified as follows: "I once owned this land in Delaware; it was sold by the sheriff; I have no interest in it now; I had an interest in it after the sheriff's sale; Mr. Kline bought it for himself and myself." This statement of the case is all that is necessary to explain the assignments of error, with which alone we have now anything to do. The 1st and 2d errors assigned are to a part of the deposition of John Green, which was permitted by the court to be read in evidence. Green was a witness for the plaintiff, and in his re-examination in chief had testified that he had an interview with the defendant, at which he had made a certain statement and exhibited certain papers. The defendant asked him on cross-examination to state all that Mr. Kline said at the time these papers were exhibited. The plaintiff's counsel objected to the answer, because the plaintiff was not present, and because the declarations were *post litem motam*. But it is too plain for argument, both on reason and authority, that the defendant had a right to all that had taken place at the same interview, of which he had given only a part, whether it was *ante* or *post litem motam*. Unless the whole of what is said at the same time is received and considered, the true meaning and import of the part cannot be ascertained: 1 Greenl. on Ev., § 202. There was no error therefore in the admission of this evidence.

The 3d error assigned is in admitting in evidence the instrument of writing dated August 20th 1857. There was a subscribing witness, who was examined and said, on being shown the paper, "This is my signature as a witness;" but on cross-examination he added, "I do not know whether the plaintiff is the person who signed the writing in my presence." It is well settled that if there is any evidence, however slight, tending to prove the formal execution of a deed, it is sufficient to entitle it to go to the jury: 2 Greenl. Ev., § 295. Few men can swear positively to the sealing and delivery of an instrument after any considerable time: Piggott *v.* Holloway, 1 Binn. 442. If, as often happens, the party is a stranger to the subscribing witness, the same difficulty

[Hamsher *v.* Kline.]

arises. Identity of name is sufficient in the first instance as presumptive evidence of identity of person: 3 Phillips on Ev. 1301, 1302, Cowen & Hill's ed.; Atchison *v.* McCulloch, 5 Watts 13. In the absence of countervailing proof the law presumes against fraud and in favor of innocence: Case of Miller's Estate, 3 Rawle 317. If a subscribing witness is dead, or out of the state, or has become interested since the execution, evidence of his handwriting is sufficient: Prince *v.* Blackburn, 2 East 250; Hamilton *v.* Marsden, 6 Binn. 45; Kelly *v.* Dunlap, 3 P. R. 136. Equal reason exists for the application of the same rule where he has lost all memory of the transaction. Primâ facie the presumption is that what he has attested has taken place in his presence: Sigfried *v.* Levan, 6 S. & R. 311. It is clear that the question of the admissibility of the paper on this evidence was in no way affected by the fact that another witness had testified that he did not recognise it as the bond delivered to Mr. Fisher. This was for the jury. This assignment of error, therefore, is not sustained.

The 4th and 5th errors alleged are in admitting in evidence an instrument of writing executed by the plaintiff, dated December 10th 1857, because it was not legal evidence of a settlement between the parties for the purchase-money of the tract of land, or the payment of the money therein named. If it was not, it would be difficult to see what would be. It was an acknowledgment under the hand and seal of the plaintiff, that he had "received of William O. Kline the sum of eleven hundred and fifty dollars in full of the purchase-money of the tract of land" in question. A receipt in full is primâ facie, but not conclusive, evidence of a settlement. It may be attacked on the ground of fraud, mistake or ignorance of his legal rights by the party who gave it: Thompson *v.* Faussat, Peters' C. C. Rep. 185. So if the relation between the parties was one of trust or confidence, such as guardian and ward, or attorney at law and client, it might be insufficient of itself. But this was clearly a question of fact for the jury, and could not be decided by the court by refusing to admit the paper. These assignments of error are therefore not sustained.

There are fourteen other errors assigned to the answers of the court below in the charge to the points presented. It will be unnecessary to consider them separately. It is not and could not be pretended that the law was not correctly stated. But the complaint is that the learned judge below assumed certain facts as proved, of which uncontradicted evidence had been given, without stopping to qualify each instruction by informing the jury that the facts were for them. He did so tell them emphatically once. "The jury are entitled to take all the evidence into view in determining whether Kline did act in a professional capacity for Hamsher. This and every other question of fact throughout this cause must be decided by the jury. Principles only can be laid

[Hamsher *v.* Kline.]

down by the court." Nor can we see any ground for another complaint made in the argument that the jury were misled by the learned judge below. The points presented were so framed that a categorical affirmance or denial could not be given. The instructions to the jury in substance were that if Kline had undertaken to have the mortgage collected through an attorney at law in Delaware; if the plaintiff was present with Kline at the sale; was fully informed by him of all the circumstances material to be known, and agreed to join him in the purchase; that Kline paid his full share of the bid, and that matter was settled; and that afterwards, in absence of all fraud, undue influence or mistake, Hamsher sold his interest to Kline, and received from him the full consideration; the verdict of the jury ought to be for the defendant. In his answer to the plaintiff's 5th point, the learned judge said, "An agent ought to make a full disclosure of every fact that can benefit the principal, and cannot violate this rule without being liable for any injury that might have been avoided if the principal had been better informed. Whether Kline had performed his duty in this respect, is a question of fact for the jury on the evidence." Indeed it is plain that if the plaintiff in error has suffered injury, it has been at the hands of the jury and not of the court.

Judgment affirmed.