(73 Misc. Rep. 162.)

## In re JACOBS' WILL.

(Surrogate's Court, Monroe County. July, 1911.)

WILLS (§ 123*)—EXECUTION—ATTESTATION.

A will, to the attestation clause of which one of the witnesses signed the testator's name, instead of his own name, the act having been done animo attestandi, and without any fraud or intent to wrongfully personate another person, should be admitted to probate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 321–331; Dec. Dig. § 123.*]

Proceedings on the probate of the will of John R. Jacobs, deceased. Probate confirmed, and petition for revocation thereof denied.

Lynn Brothers, for executors.
Decker & Menzie, for contestant.

BROWN, S. This is a proceeding on the petition of Frank Jacobs to procure the revocation of the probate of the last will and testament of John R. Jacobs, deceased, heretofore probated in this court. The will referred to was admitted to probate by decree of this court on the 8th day of February, 1910.

This proceeding is brought under section 2647 of the Code of Civil Procedure. The decedent was a resident of the county of Monroe, and died seised of real and personal property therein; and the petitioner was interested in the estate, he being a son of the decedent and one of his heirs at law and next of kin. The petition contains allegations against the validity of the instrument referred to as a will and the competency of the proof thereof, and is presented within the time required by law. All the parties interested, as appears by the papers herein, are before the court by proper citation. The parties submitted their proofs to the court, which consisted of the evidence received upon the probate and some additional evidence; and the matter now stands before the court for decision as a de novo proposition, as to whether the will in question was properly executed, acknowledged, declared, and witnessed, pursuant to the statute in such case made and provided. After hearing counsel in open court, and reading their briefs filed herein, and due consideration of the subject by the court, I render the following decision:

It appears as a matter of fact that, on or about the 18th day of April, 1903, the testator, John R. Jacobs, signed his name to the instrument offered for probate herein, in the presence of John D. Lynn and Smith O'Brien, both attorneys and counselors at law, and that at the time of making such subscription he declared said instrument so subscribed by him to be his last will and testament, and requested the said John D. Lynn and Smith O'Brien to sign their names as witnesses thereto; and thereupon, in the presence of the testator and in the presence of each other, the said John D. Lynn wrote "Jno. R. Jacobs" at the end of the attestation clause, following the signature of the said testator, and the said Smith O'Brien subsequently wrote "Smith O'Brien" under the words "Jno. R. Jacobs," written there by

the said John D. Lynn. The words "residing at" appear in printed script after the respective name written by each of said witnesses, and following said words in each line containing said respective written names are the written words "Rochester, N. Y." At the time neither the said Lynn nor the said O'Brien observed what name was written at the end of the attestation clause by the said John D. Lynn, and there is no evidence to show that the testator, John R. Jacobs, observed what names were written by the witnesses at the end of the attestation clause. At the commencement of said will the testator is described as:

"I, John R. Jacobs, of Gates, county of Monroe and state of New York."

It will be observed that the name of the testator at the end of the will is written "John R. Jacobs"; that the name written for the name of the first witness at the end of the attestation clause is written "Jno. R. Jacobs." The testimony of the witness Lynn shows that he wrote the name "Jno. R. Jacobs" at the end of the attestation clause, after having been requested by the testator to sign his name thereto as a witness, and the witness O'Brien testifies that he wrote his own name under the writing made by the said Lynn at the end of the attestation clause, upon the request of the said testator to sign as a witness to said instrument. It further appears that the said John D. Lynn generally writes his name "Jno. D. Lynn."

With this state of facts existing, the question arises: Was the will attested and witnessed in compliance with the statute by John D. Lynn signing the name "Jno. R. Jacobs" at the end of the attestation clause, instead of signing his own name in full, or "John D. Lynn," or "Jno. D. Lynn," as is his usual method of signing his name?

The statute requires that every last will and testament of real or personal property, or both, shall be executed and attested in the following manner:

"First. It shall be subscribed by the testator at the end of the will.

"Second. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.

"Third. The testator at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.

"Fourth. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator."

The precise question at issue herein has never been before the courts of this state in such a way as to be reported. We find the courts passing upon the question as to how a testator may sign his name to a will. It has been held that the testator may sign his name in full, or he may sign by mark, or he may even sign a fictitious name; and yet, if it is proved that the testator named in the will did in any one of those ways subscribe his name to the will, it is sufficient. It has been held that a subscribing witness may sign by mark, or by another person, the same as a testator.

In case of Morris v. Kniffin, 37 Barb. 336, where one of the witnesses signed by mark, the court says:

"I do not regard it as an insuperable objection to the valid execution of a will that one of the subscribing witnesses makes his mark, instead of writing his name. It is still a signing of his name, or subscription, I think, within the meaning of the statute in regard to the execution of wills. 2 R. S. 63. It has been so decided to be in regard to the execution by the testator. Chaffee v. Baptist Missionary Convention, 10 Paige, 85 [40 Am. Dec. 225]; Keeney v. Whitmarsh, 16 Barb. 141. And the reason of the rule applies equally to the case of subscribing witnesses. Indeed, as to the latter, a mark has been held to be a good subscription. Meeham v. Rourke, 2 Bradf. Sur. 385. It might render the establishment of the will more difficult, in the case of the death of such a witness; for the difficulty or impossibility of authenticating the mark might detract much from the presumption of due execution which arises from the apparent compliance with the statute formalities, and the signatures of the testator and the subscribing witnesses in their appropriate place upon the instrument itself. Remsen v. Brinckerhoff, 26 Wend. 325 [37 Am. Dec. 251]; Butler v. Benson, 1 Barb. 538; Lewis v. Lewis, 11 N. Y. 224."

We find, by referring to the courts of New Hampshire, that in the case of Lord v. Lord, 58 N. H. 9, 42 Am. Rep. 565, the court says:

"It is clearly settled that a witness may effectually subscribe his name by a mark, or by initials, or by a ficitious name, if used without the purpose of personating another, and that, if he cannot write, his hand might be guided by another."

In Chase v. Kittredge, 11 Allen (Mass.) 59, 87 Am. Dec. 687, the court says:

"Reference has also been made to the rule that a witness may subscribe by a mark, as well as by writing his name in full. This is now well settled, both in England and the United States."

In Re Goods of Maddock, L. R. 3 Prob. & Div. 169, the court says:

"I take it as a rule that if a witness make any mark, with an intention thereby to subscribe the will, it will be sufficient."

Counsel for the petitioner herein raises the question that the words "sign his name," used in our statute relative to the signature of the witness, do not mean the same as "subscribe" as used in the statute relative to the signature of the testator. The word "subscribe" is defined in the Century Dictionary to mean "to sign with one's own name"; and, in 1 Redfield on Wills, 229, we find the following:

"There seems to be no difference in legal significance between the word 'sign,' which in the statute is applied to the devisor, and the word 'subscribe,' which is applied to the witnesses. Hence it has been held the witnesses may subscribe by mark, or by initials, or by a fictitious name, if used without the purpose of personating another."

I am of the opinion that the use of the word "subscribe," in the one instance, and of the phrase "sign his name," in the other, was intended by the Legislature to mean the same thing, and the different language was simply used for rhetorical purposes. Being of that opinion, the change of the words of the English statutes to the words of our present statute relating to the execution and attestation of wills is unimportant, and makes it proper and profitable to look at the English authorities on this subject.

We find in Goods of Ashmore, 3 Curt. Ecc. 756, that the testatrix drew her will and called two of her servants to witness it. Both wit-

nesses then made a mark. The testator then signed the name of each party about her mark, signing one "Elizabeth Cummins" instead of "Elizabeth Sharpe"; the latter being the witness' name and the former being the name of a prior servant, or some person formerly about the house. This was held to be a sufficient compliance with the statute.

In the case of Goods of Sperling, 2 Swaby, 272, the attorney drew the will at the home of the testator, and then called a servant of the testator to witness with himself, directing him to sign as servant to Mr. Sperling, the testator. The witness signed only these words, "Servant to Mr. Sperling," omitting his name. The court held it good.

In Goods of William Olliver, 2 Spinks Ecc. & Adm. 57, Richard Edmonds, who was the solicitor, and John Edmonds, who was his clerk, signed as witnesses to a will drawn by the said Richard Edmonds. Richard Edmonds signed his name, "Richard Edmonds, Solicitor." John signed as the other witness, but by mistake signed, "John Clerk, His Clerk." This was held good.

In the case of Adams v. Chaplin, 1 Hill Eq. (S. C.) 266, a witness, Elizabeth Ellis, signed only "E. E." This was held sufficient.

The only case we find that squarely holds the contrary to the above authorities is In re Walker, 110 Cal. 387, 42 Pac. 815, 30 L. R. A. 460, 52 Am. St. Rep. 104. In that case the facts showed that the will of Ozias Walker, deceased, was written by C. G. Warren, the attorney at law of the testator, and was executed in the presence of H. D. White and said C. G. Warren, who were requested by the testator to attest as witnesses its execution. The requirements of the statute were complied with in all respects, saving that the witness C. G. Warren, in signing his name as a witness at the end of the will, inadvertently wrote the name "C. G. Walker," thus employing his own initials, but the testator's surname. This was held by the Supreme Court of the state of California as not a proper attestation of the will, by a vote of four to three; the three dissenting judges each writing an opinion.

As we are not bound by the decisions of the Supreme Court of California, and as the dissenting opinions of the three justices appeal to us as more reasonable and in conformity with the tendency of the courts of this state relative to signatures, we prefer to follow the English cases and the authorities of other states consonant with the dissenting opinions, rather than the prevailing opinion in the California case.

In any other instrument than a will there is no question but, upon the proof that is before us, there being no proof of fraud or intent to wrongfully personate another, the signature "Jno. R. Jacobs" would stand in place of the name of "Jno. D. Lynn," as effectually as if "Jno. D. Lynn" had been written.

In David v. Williamsburg Fire Insurance Co., 83 N. Y. 265, 269 (38 Am. Rep. 418), Judge Earl writes:

"Figures or a mark may be used in lieu of the proper name; and where either is substituted by a party, intending thereby to bind himself, the signature is effective to all intents and purposes."

In the case of Brown v. Butchers' & Drovers' Bank, 6 Hill, 443, 41 Am. Dec. 755, a man became charged as an indorser by writing the figures "1–2–3" on the back of a note. Schouler, Wills, § 331, says:

"It is only needful that the witness should have intended to denote on his part the full and deliberate act of a legal attestation and to have performed by his own hand a subscription accordingly."

And at section 332:

"The identification of himself as the person actually attesting is implied in the signature of a witness, whatever shape that signature may take. Hence the use of a fictitious name, or the misspelling, variation, or contraction of one's own name, or even the signature which describes, instead of naming at all, may answer the purpose of the statute, provided the genuine intention of subscribing as a witness accompanied the act."

Now, we must remember that "John" is the first name of John D. Lynn, and that the signature "Jno." is his customary method of writing his first name. In the case at bar no other conclusion can be drawn from the evidence before us than that John D. Lynn, with the purpose and intention of being a subscribing witness to the will of the testator, at the request of the testator sat down and wrote the words and letters "Jno. R. Jacobs" at the end of the attestation clause and before the printed words "residing at," and following those printed words in writing appear the words "Rochester, N. Y." The said words "Jno. R. Jacobs" were written through inadvertence and mistake for and in the place of the correct usual name and signature of the said John D. Lynn. The words "Jno. R. Jacobs" were written by the said Lynn "animo attestandi."

To hold that this is not a sufficient compliance, where the party who made the signature, call it, as you like, a mark or a fictitious name, can be produced and identified as the person who made such signature, after being requested to sign as a witness, and undertaking to act as a witness in the presence of the testator, would be adopting a technical rule which does not seem to me is in harmony with the decisions of this state, several of the sister states, and of the English authorities on the subject of the attestation of wills. In my opinion there was a sufficient compliance with the formalities prescribed by the statute for the attestation of a will.

I do not pass upon the effect of such a signature in the case of the death of the witness before the examination of the witness upon a proceeding for the probate of the will of the testator.

Accordingly I find, as matter of fact, that the will of John R. Jacobs, offered for probate herein and for which revocation of probate has been sought in this proceeding, was duly signed, published, and declared by the said testator, on the date thereof, to and in the presence of the two witnesses, who, at the request of the said testator, and in his presence, and in the presence of each other, signed as witnesses thereto, and that at the time of making such will the said testator was of sound mind and memory, and capable of making a will, and not under any restraint.

I find, as conclusion of law, that the probate of the said will, bearing date the 18th day of April, 1903, granted by decree of this court

February 8, 1910, should be confirmed, and that the petition herein for revocation of said probate should be denied.

Let detailed findings be prepared in accordance with the terms of this decision and settled on five days' notice, and let a decree be entered thereupon, without costs to either party as against the other.

Decreed accordingly.